In the Matter of ROBERT H. CODEY, on Behalf of the State of New Jersey, Respondent. CAPITAL CITIES, AMERICAN BROADCASTING CORP., INC., Appellant.

First Department, October 27, 1992

## APPEARANCES OF COUNSEL

*Gregory L. Diskant* of counsel *(Crystal Mayner* with him on the brief; *Patterson, Belknap, Webb & Tyler,* attorneys), for appellant.

*Paul Harnisch* of counsel *(Patrick J. Hynes* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

On this appeal we are called upon to interpret the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State which is codified in this State in CPL 640.10.

In April 1991 petitioner, on behalf of the State of New Jersey, moved in Criminal Term of the Supreme Court of New York for a subpoena compelling the appearance of respondent Capital Cities, American Broadcasting Corporation, Inc. (ABC) before the New Jersey Grand Jury in Mercer County to produce certain items held by ABC's custodian of records. The application was made pursuant to section 640.10 based on supporting papers asserting that the Grand Jury of Mercer County, New Jersey, was in the process of investigating allegations of point shaving by members of the 1987-1988 men's basketball team at North Carolina State University. In February and March of 1990, ABC's News Division had broadcast three stories concerning the alleged point shaving. The stories

relied in part on confidential sources and included excerpts of an interview with one unidentified player, who was shown only in shadow and with his voice disguised.

The items sought to be subpoenaed are the notes of interviews, if any, which were conducted by ABC World News Tonight correspondent Armen Keteyian, of Kelsey Weems, a player on the North Carolina basketball team, and video and audio tapes, if any, of interviews with Weems. The affidavit filed in support of the application alleges that Mr. Weems subsequently stated under oath that he was the player who had been interviewed anonymously on ABC World News Tonight, but that the portions of his interview which were broadcast were taken out of context and that he did not implicate himself in point shaving.

The Uniform Act to Secure the Attendance of Witnesses from Without the State is a reciprocal act which has been adopted in all 50 States, Puerto Rico, the Virgin Islands and the District of Columbia. The Act defines the procedure and circumstances under which a party to a criminal proceeding in one State may secure the attendance of witnesses residing outside that State's jurisdiction and subpoena power and it is designed to cover subpoena duces tecum as well as subpoena ad testificandum (*Matter of State of Washington v Harvey,* 10 AD2d 691, *appeal dismissed* 8 NY2d 865).

Under the statute, in order to secure a subpoena for an out-of-State witness, an application must, in the first instance, be brought in the trial court in the jurisdiction where the criminal proceeding is pending. That court must decide, *inter alia,* whether the witness is material to the criminal proceeding and, if such finding is made, issue a certificate to that effect (*see, State v Smith,* 87 NJ Super 98, 208 A2d 171). Thereafter an application based on such certificate may be submitted to the courts of the State whose cooperation is sought in compelling the witness's attendance. Significantly, that court too must hold a hearing, upon notice to the potential witness, to determine anew whether the evidence sought is material to the other State's proceeding and, in addition, to determine if the evidence is also necessary to that proceeding and if it will cause undue hardship to the witness if he or she is compelled to attend and testify in the requesting State (*State of New Jersey v Bardoff,* 92 AD2d 890). While the burden of proof at the hearing on the issues of materiality and necessity rests upon the party seeking the evidence (*supra),* the certificate of

the requesting State "shall be *prima facie* evidence of all the *facts* stated therein" (CPL 640.10 [2] [emphasis supplied]).

In the instant case, the application before Criminal Term, Supreme Court, was accompanied by a certificate from the assignment Judge of the Superior Court of New Jersey, Law Division (Criminal), which certified that that court had found that the materials sought were necessary and material to the ongoing Grand Jury investigation. The certificate did not, however, recite the facts upon which that court had based its conclusion.

In opposing the application, ABC did not argue that the items sought were not relevant to the Grand Jury investigation. Rather, it argued that they were incapable of being found either material or necessary because they were privileged from disclosure under the laws of New Jersey, as well as under the laws of this State. In support, ABC offered the affidavit of Armen Keteyian, who stated that any information he had collected in connection with the story was in his role as a reporter gathering the news and that the player who was interviewed anonymously on television was a confidential source. Petitioner, in turn, declined to address the question of privilege, and argued that the courts of this State may only consider whether the material sought is material and necessary and that questions of admissibility are irrelevant at this stage of the proceedings and must await resolution by the courts of New Jersey after the subpoena directing attendance in that jurisdiction is issued.

Petitioner's application was granted, based on findings by the trial court that the certificate issued by the Superior Court of New Jersey was prima facie evidence that the evidence was material, with the affidavit offered by petitioner adding further support to that conclusion, that the issue of whether the items sought were privileged under New Jersey law was not properly raised on the application and, finally, that, in view of the geographical proximity, respondent could not argue that it would suffer "undue hardship" by being compelled to appear in Mercer County, New Jersey.

Since we conclude to the contrary and find that the impact of the newsperson's privilege on the evidence sought is a relevant issue that must be decided by the courts of this State in determining whether to grant the application and issue the subpoena, we reverse.

While the Uniform Act to Secure the Attendance of Wit-

nesses from Without the State is of vital importance in facilitating the securing of evidence necessary to the just disposition of criminal proceedings, it is not to be invoked casually. As the Court of Appeals has held, "The process for securing the presence of an out-of-State witness has been termed 'drastic' because it represents an incursion upon the liberty of a prospective witness, who, although accused of no crime or wrongdoing, is required to attend a criminal proceeding in another State" *(People v McCartney,* 38 NY2d 618, 622; *see also,* Bellacosa, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 640.10, at 306).

Here, the certificate issued by the Superior Court of New Jersey did not state the facts upon which its conclusion of materiality and necessity were based and gave no indication as to whether the issuing court had considered any questions surrounding the admissibility of the evidence in determining its materiality. It is questionable whether this conclusory certificate, barren of any factual underpinnings, would, standing alone, be adequate to support the petition *(see generally,* Annotation, *"Sufficiency of Evidence to Support or Require Finding that In-State Witness in Criminal Case is 'Material and Necessary'* * * *",* 12 ALR4th 771, 775-777, § 3). Such deficiencies in the certificate, however, are not here significant because petitioner itself supplied a factual basis for the finding of materiality in the general sense by means of its affidavit demonstrating the relevance of the potential evidence. Not only does ABC not contest the facts as set forth, but it makes clear that it is not attacking the materiality or necessity of the requested items in any sense other than that they will ultimately be ruled privileged and therefore inadmissible.

Thus, the pivotal issue for our determination is whether the courts of this State should, in the first instance, consider and resolve the impact which the personal privilege raised by the witness will have on the admissibility of the evidence sought before making the ultimate determination as to whether the evidence is necessary and material to the New Jersey proceeding. It is significant that the statute requires the State being petitioned, here New York, to make its own separate and independent finding on materiality and necessity before it is obliged to issue an order compelling one within its borders to appear in the courts of another State or jurisdiction.

The significance of the admissibility of evidence on its materiality in the context of CPL 640.10 is clearly set forth in *People v McCartney (supra,* at 622) where the Court of Appeals

held that, in evaluating materiality of evidence in a proceeding pursuant to that statute, the court must consider its "relevan[ce], admissibil[ity] and * * * significance to [the] case." While, in *McCartney,* the Court was dealing with a situation in which New York was the requesting State, rather than, as here, the State which has been requested to compel the production of the evidence, there is no reasonable basis to find that admissibility is any less relevant a factor in determining the issue of materiality. In either case we are dealing with the same rule of evidence.

While case law interpreting various aspects of the statute is somewhat limited, since the statute itself expressly states that it should be "so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it" (CPL 640.10 [5]), reference to precedents indicating the manner in which the statute has been interpreted in other jurisdictions is instructive. The case of *Matter of McCauley* (63 Ohio App 2d 25, 408 NE2d 697) is particularly apposite since there the courts of Ohio were faced with a virtually identical issue when the attendance of a reporter was sought by a criminal defendant being tried in California. The court held that the reporter was not a material and necessary witness within the meaning of the Uniform Act because the testimony which was sought was subject to the qualified privilege afforded to newspersons by the Constitution as well as by the statutes of each State.

In *People v Marcy* (91 Mich App 399, 283 NW2d 754) the Michigan court was confronted with a request by the Attorney General of Delaware for an order pursuant to the Uniform Act directed to a polygrapher who had examined a murder suspect who was the subject of a Delaware investigation. The polygrapher's examination had been undertaken at the request of the subject's attorney. The Michigan courts refused to issue the order sought on two grounds—first, that the witness was protected by the Michigan polygrapher privilege statute, which was a policy declaration of that State and which would be violated if he were forced to testify in Delaware, and second, that the polygrapher's evidence was also protected by the attorney-client privilege which was recognized by both States, and, therefore, "any witness whose testimony is barred by a privilege is not a material and necessary witness within the meaning of the Uniform Act". *(People v Marcy, supra,* 91 Mich App, at 407, 283 NW2d, at 757.) The latter ground is, of course, precisely the situation which exists in the instant case,

where the privilege asserted is recognized by both States, and we need not address the thornier policy question that would arise when the privilege asserted is recognized by only one of the two jurisdictions involved.

This Court's decision in *Matter of State of Washington v Harvey (supra)*, heavily relied upon by petitioner-respondent, was decided prior to the Court of Appeals' decision in *People v McCartney (supra)*, and in any event, is not in conflict with the present interpretation of the statute. In that case, this court granted the application of the State of Washington to compel the attendance of a witness at a Grand Jury proceeding on a finding that the witness was material and necessary, and rejected the witness's assertion that he had no personal knowledge of the facts. As was made clear in the dissent, the only privilege there involved was one belonging to the corporation of which the potential witness was the president. Since the subpoena was directed to the witness personally, and not to the corporation, the question of privilege in that limited context was left to the requesting State. That situation differs markedly from the one in the instant case, where the party subpoenaed is itself clearly entitled to raise the privilege involved.

The prevailing authorities make clear that, once an issue of privilege impacting on admissibility is raised by a person who has standing to do so, the court which is asked to issue an order compelling that person to appear and produce its evidence in another State should consider it in evaluating materiality and necessity. Under these circumstances, it was error for the Supreme Court to decline to consider whether the evidence was privileged and therefore incapable of being found either material or necessary to the New Jersey proceeding. This interpretation represents a pragmatic balancing between a requesting State's need for the presence of a particular witness' evidence at a criminal proceeding within its borders and the "drastic incursion" imposed upon the liberty of an innocent third-party witness by being forced to attend the out-of-State proceeding. *(People v McCartney, supra.)* If the evidence sought is obviously inadmissible by reason of the witness' personal privilege, neither of the foregoing interests is served by ignoring the evident realities at the earliest stage possible within the statutory framework.

The People raise the spectre of dire consequences that will emanate from consideration of the nonadmissibility of the evidence sought in this case because of privilege. They opine

that we will be confronted, in every case brought under the statute, by witnesses who will raise "any and all challenges to the admissibility of the evidence that might apply under the law of the requesting State" leading to untold numbers of *Huntley, Mapp, Wade* and other evidentiary hearings before our courts at which the law of the requesting State will need to be applied. Not only is the empirical evidence during the statute's more than 50-year history in this State to the contrary, but the People ignore the fact that a witness, in distinction to a defendant, would have no standing to raise evidentiary objections leading to such hearings, and such issues, where properly raised by a defendant, must necessarily be resolved within the context of the case in which the defendant is charged. In contrast, the case before us concerns a privilege personal to the witness which the witness asserts to demonstrate that the evidence sought will be inadmissible by virtue of that privilege, under the laws of both New Jersey and New York, and therefore cannot be considered "necessary" within the meaning of the statute.

Once it is concluded that the courts of the State being petitioned, here New York, should make the determination as to whether or not the evidence in question will be rendered inadmissible by virtue of the witness' privilege, attention must be addressed to that issue.

It may be noted that petitioner has consistently declined to address ABC's argument that the items sought are privileged and its silence in that regard may be construed as implicitly conceding the point. In any event, on the record before us, it must be concluded that the evidentiary items sought from ABC are clearly and unequivocally privileged not only under New Jersey law but under the law of this State as well (NJ Stat Annot § 2A:84A-21; NY Civil Rights Law § 79-h), eliminating any issues of policy conflicts between the two jurisdictions. Moreover, under either New Jersey or New York law, ABC has standing to raise the privilege, which belongs to the reporter who conducted the interviews which are sought. Both the New Jersey statute (NJ Stat Annot § 2A:84A-21.3) and the New York statute (Civil Rights Law § 79-h [f]) are sufficiently inclusive to extend the privilege to the employer on whose behalf the reporter actually gathered the news.

Since there is no question that Mr. Keteyian obtained the information sought to be disclosed in the course of his professional activities and that at the time of the interview the subject thereof anticipated that it would be kept confidential,

it appears that the argument which petitioner will attempt to utilize in order to overcome the newsperson's privilege is that the privilege was somehow waived subsequent to the interviews. This position, however, is unavailing, since the broadcast of a portion of the videotaped interview does not constitute a waiver of the privilege as it relates to the remainder of the interviews. The New Jersey statute specifically protects information gathered in the course of reporting the news "whether or not it is disseminated." (NJ Stat Annot § 2A:84A-21 [b].) Moreover, the highest court of that State has left no doubt that this statute is designed "to establish the strongest possible protection for the newsman and the news media" *(In re Schuman,* 114 NJ 14, 20, 552 A2d 602, 605, quoting *In re Farber,* 78 NJ 259, 302, 394 A2d 330 [Handler, J., dissenting], *cert denied sub nom. New York Times Co. v New Jersey,* 439 US 997) and that it "favor[s] protecting the press from being compelled by the State to testify even where the substance of the testimony sought has been disseminated in an article" *(In re Schuman, supra,* 114 NJ, at 20-21, 552 A2d, at 605). The New York statute provides for a waiver only if the person who holds the privilege "voluntarily discloses or consents to disclosure *of the specific information sought to be disclosed"* (Civil Rights Law § 79-h [g] [emphasis supplied]). It is clear, therefore, that the broadcast of part of the interview would not be a disclosure of the "specific information" contained in the remainder of the interview.

Nor can petitioner establish a waiver of the privilege by its assertion that Kelsey Weems has stated that he was the source of the story and has stated that he was not sure what other comments he had made concerning point shaving during his interviews. The New Jersey courts have unequivocally held that the privilege is that of the journalist, not the source, and may therefore only be waived by the reporter *(State v Boiardo,* 83 NJ 350, 416 A2d 793). The New York statute similarly provides that the privilege may only be waived by the professional journalist or newscaster who is entitled to claim it (Civil Rights Law § 79-h [g]). In any event, even assuming, arguendo, that the source of a story may waive the privilege, and that petitioner offered sufficient evidence to establish that Mr. Weems was, in fact, that source, Mr. Weems' mere assertion to law enforcement officials that he was not sure what else he had said during the interviews could hardly be said to constitute a waiver.

Under the circumstances here present, ABC has established

beyond peradventure that petitioner's only purpose in demanding its presence in New Jersey is to seek evidence which is privileged from disclosure and that, since such evidence can be considered neither material nor necessary to the Grand Jury investigation, the order issuing the subpoena compelling it to attend should be reversed and the subpoena quashed.

Accordingly, the order of the Supreme Court, New York County (Herbert J. Adlerberg, J.), entered June 28, 1991, granting the application of petitioner pursuant to CPL 640.10 to compel respondent to produce certain evidence in its possession before a State Grand Jury in Mercer County, New Jersey, should be reversed, on the law, and the application denied, without costs.

MURPHY, P. J. (dissenting). The facts are as stated in Justice Ellerin's opinion.

The statute to be construed, the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (CPL 640.10), sets forth without ambiguity the procedure and relevant considerations for a court in this State when a court in another State has certified that a person within this State is a material witness whose attendance and testimony are required in a criminal prosecution or Grand Jury investigation in the foreign jurisdiction. The statute provides, upon the issuance of such certification, for a hearing to be held in this State's courts to determine whether the witness is in fact material and necessary and whether "it will not cause undue hardship to the witness to be compelled to attend and testify * * * in the other state" (CPL 640.10 [2]). If, after such a hearing, it is found that the witness is material and necessary to the out-of-State prosecution or investigation and that no undue hardship is entailed by his or her attendance in the foreign jurisdiction, process must issue in this State compelling the witness's presence and testimony in the State from which the certification has come.

Here, it is not disputed that, as the hearing court found, the respondent's testimony and records are material and necessary—at least as those terms are ordinarily understood—to the New Jersey investigation in which they are sought. It is, however, respondent's contention that the evidence which the subpoena would compel is privileged under New Jersey law and, accordingly, ultimately inadmissible. Respondent further contends that the New York hearing court ought to have taken cognizance of the inadmissibility of the evidence at

issue, and, upon that ground, refused to issue the challenged subpoena. The governing statute, however, does not afford courts of the sending State the latitude to deny issuance of a subpoena on any but the grounds specified therein, and nowhere does the statute specify evidentiary admissibility as a relevant decisional criterium.

While I share Justice Ellerin's concern that the liberty interests of persons called upon to give evidence in foreign jurisdictions not be unduly curtailed, that is a concern which I believe is adequately addressed by the statute as written; even if it were permissible, there would exist no need judicially to engraft upon the statute the additional limitation proposed by respondent. The statute does, of course, allow the court of the sending jurisdiction broad discretion to refuse to compel an appearance in a foreign jurisdiction in any case where such an appearance would involve undue hardship. Here, however, there exists no serious claim that the present respondent, the American Broadcasting Company, will suffer any undue detriment by appearing across the Hudson in the neighboring State of New Jersey in accordance with the subpoena's demand. Indeed, there is no reason to suppose that respondent's claim of privilege would have been appreciably more difficult to assert in New Jersey than it has been here. As Justice Ellerin has ably pointed out, the claim is straightforward and would most probably be disposed of routinely in either jurisdiction. Of course, had the claim not been so straightforward, the wisdom of abiding by the statute's implicit placement of venue and having the evidentiary issue arising under the laws of New Jersey decided by the courts of that State would not be arguable.

To be sure, it is true that in *People v McCartney* (38 NY2d 618, 622) the Court of Appeals, in language unnecessary to its holding, did state that the admissibility of the evidence sought was a consideration in determining whether out-of-State evidence should be requested; but nothing in that decision can be read to require, as the respondent in effect contends, that the courts of the sending State supplant the courts of the requesting State as ultimate arbiters of evidentiary admissibility in the requesting State. If the requesting State wishes out of commendable solicitude for the liberty interests of persons in other jurisdictions, to advance its consideration of evidentiary admissibility so as to render it a factor in determining whether a request for out-of-State evidence is to be made, it may, of course, do so, but this is not required by the statute.

Nor does the failure of the requesting State fully to consider at the point of certification the ultimate admissibility of the evidence sought constitute a relinquishment of the undoubted prerogatives of the courts of the requesting State to determine whether concededly material and necessary evidence is in the end to be received in criminal prosecutions and investigations conducted within their jurisdiction.

As I think it quite plain that the hearing court committed no abuse of discretion in issuing the challenged subpoena *(see, People v McCartney, supra,* at 623) and, indeed, that had the subpoena been denied upon the ground advanced by the respondent a reversal would now be required, I believe that the order appealed should be affirmed.

WALLACH and ASCH, JJ., concur with ELLERIN, J.; MURPHY, P. J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered June 28, 1991, granting the application of petitioner pursuant to CPL 640.10 to compel respondent to produce certain evidence in its possession before a State Grand Jury in Mercer County, New Jersey, is reversed, on the law, and the application denied, without costs.