82 N.Y.2d 521 (1993)
626 N.E.2d 636
605 N.Y.S.2d 661
In the Matter of Robert H. Codey, on Behalf of the State of New Jersey, Appellant. Capital Cities, American Broadcasting Corp., Inc., Respondent.
Court of Appeals of the State of New York.
Argued August 31, 1993.
Submitted on reargument October 12, 1993.
Decided November 22, 1993.
Robert M. Morgenthau, District Attorney of New York County, New York City (Morrie I. Kleinbart, Patrick J. Hynes and Paul Harnisch of counsel), for appellant.
Patterson, Belknap, Webb & Tyler, New York City (Gregory L. Diskant and Paul W. Laisure of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., SMITH and LEVINE concur with Judge TITONE; Judge BELLACOSA dissents and votes to dismiss in a separate opinion.
*523 TITONE, J.
Petitioner, appearing on behalf of the State of New Jersey, commenced this proceeding under CPL 640.10 for a subpoena directing respondent to attend and produce documents and other evidence for a Grand Jury investigation that was pending in Mercer County, New Jersey. Having been denied the requested relief in the Court below, petitioner asks this Court to resolve the narrow question of whether the potentially privileged status of the evidence sought is a proper consideration for a CPL 640.10 (2) determination. Contrary to *524 the Court below, we conclude that the privileged status of the evidence is not a proper factor for consideration under CPL 640.10 (2) and that, accordingly, there should be a reversal.
In February and March of 1990, respondent's news division broadcast three stories regarding an alleged point-shaving scheme by certain members of the 1987-1988 North Carolina State University men's basketball team. The stories were based, in part, on information gleaned from confidential sources. In addition, the broadcast included brief excerpts of an interview with an unidentified player, who was shown in silhouette and had his voice disguised so as to preserve his anonymity.
The unidentified player subsequently agreed to come forward and to cooperate with a Mercer County, New Jersey, Grand Jury that was investigating certain alleged illegal gambling activities. The player acknowledged to New Jersey law enforcement authorities that he had been interviewed by respondent's reporter. However, he stated that he was unable to recall all of the information that he had related during the 30-minute videotaped exchange.
Wishing to obtain the unpublished information, the Mercer County Grand Jury sought to obtain the videotaped out-takes and reporter's interview notes by invoking the procedures for interstate subpoenas as prescribed in the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings (codified at CPL 640.10; NJ Stat Annot §§ 2A:81-18 to 2A:81-23). The first step in that process was an application to a New Jersey Superior Court Judge, who certified that the videotapes and notes in question were material and necessary to a Grand Jury investigation within the State and requested that they be produced by respondent, their custodian. A Deputy Attorney General of the State of New Jersey then presented the certificate to the Supreme Court, New York County, the jurisdiction in which the evidence's custodian was located, and applied for a subpoena requiring respondent to appear with the evidence before the Mercer County Grand Jury (see, CPL 640.10).
The Supreme Court granted the requested relief after concluding that the videotape and notes were material to the criminal investigation in New Jersey and that there was no hardship involved in requiring respondent to travel "right across the river" to a neighboring State. The court specifically declined to consider respondent's argument that the subpoena *525 should not be issued because the material in question was privileged under New Jersey's Shield Law, which, according to respondent, establishes a right to refuse to divulge otherwise relevant evidence in these circumstances (see, NJ Stat Annot § 2A:84A-21; see also, NY Civil Rights Law § 79-h). In the Supreme Court's view, the question of privilege was one for resolution by the courts of New Jersey, the demanding State, rather than the courts of New York, the sending State.
On respondent's appeal, the Appellate Division reversed and denied the application for a subpoena. The Court did not dispute that the evidence sought in this case would be substantively relevant and material in the context of the pending Grand Jury investigation. Nonetheless, relying on some language in People v McCartney (38 N.Y.2d 618, 622) and on two out-of-State decisions (Matter of McAuley, 63 Ohio App 2d 5, 408 NE2d 697; People v Marcy, 91 Mich App 399, 283 NW2d 754), the Court reasoned that the evidence could not realistically be considered "material" or "necessary" if it was inadmissible as a result of an applicable privilege. Since, according to the Appellate Division, the videotape and reporter's notes were privileged under both New York and New Jersey law and respondent had standing to assert the privilege in the New Jersey criminal proceeding, the Court held that a subpoena requiring production of the evidence should not be issued (183 AD2d 126, 130-135). In reaching this conclusion, the Court was influenced by this Court's general observation that the process of compelling the presence of an out-of-State witness "has been termed `drastic' because it represents an incursion upon the liberty of a prospective witness, who, although accused of no crime or wrongdoing, is required to attend a criminal proceeding in another State" (People v McCartney, supra, at 622). The Appellate Division then granted petitioner leave to appeal to this Court, certifying the following question of law: "Was the decision and order of this Court, which reversed the order of the Supreme Court, properly made?"
The Uniform Act to Secure the Attendance of Witnesses From Without a State (Uniform Act) is a reciprocal statute that has been adopted in all 50 States, as well as in Puerto Rico, the Virgin Islands and the District of Columbia. The Uniform Act provides detailed and constitutionally valid procedures whereby a party to a criminal proceeding in one State can either obtain the presence of a witness residing in another *526 State or can compel the production of evidence located in another State (see, New York v O'Neill, 359 US 1).
The first step under these procedures is for the party seeking to compel a New York witness's attendance in another State to obtain a certificate from a court of record in that State verifying that "there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence," that the individual in question "is a material witness in such prosecution, or grand jury investigation" and that "[the witness's] presence will be required for a specific number of days" (CPL 640.10 [2]). The certificate must then be presented to a Justice of the Supreme Court or a Judge of the County Court in the county in which the potential witness is located (id.). Upon presentation of the certificate, the Justice or Judge must fix a date and place for a hearing.
Following the hearing, the court must issue a subpoena commanding the witness to appear in the demanding State if, after considering the evidence, it determines "that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify * * * in the other state, and that the laws of the state in which prosecution is pending * * * will give [the witness] protection from arrest and the service of civil and criminal process" (CPL 640.10 [2]). The certificate issued by a Judge of the demanding State is "prima facie evidence of all the facts stated therein" for purposes of the sending State's CPL 640.10 (2) hearing (id.). Absent a showing of good cause, disobedience of a subpoena issued pursuant to this procedure is punishable in the same manner as is disobedience of a subpoena issued by a New York State court of record for a proceeding pending in New York (id.).
Since it involves a judicial determination of the validity and force of another State's demand for a witness's appearance, an application conducted pursuant to CPL 640.10 (2) is analytically analogous to a motion to quash a subpoena, which is ordinarily deemed civil in nature (see, Matter of Abrams [John Anonymous], 62 N.Y.2d 183, 192; Matter of Cunningham v Nadjari, 39 N.Y.2d 314, 317; Matter of Boikess v Aspland, 24 N.Y.2d 136). Furthermore, under the terms of the statute, such a proceeding may be entertained only by a Justice of the Supreme Court or a Judge of the County Court, both of which have civil, as well as criminal, jurisdiction (CPL 640.10 [2]; see, *527 Matter of Cunningham v Nadjari, supra). Accordingly, although authorized by a provision of the Criminal Procedure Law, a CPL 640.10 application should be deemed civil. Moreover, as the application is the only contest in court between the parties in New York, it is appropriate in this context to treat it as a special proceeding and, as such, resulting in an order that is appealable under the provisions of the CPLR (see, e.g., Matter of Abrams, supra; cf., Matter of Santangello v People, 38 N.Y.2d 536, 538).[1] In this case, the order of the Appellate Division resolves all of the issues between the parties to this special proceeding and is therefore final. Accordingly, the Appellate Division had the authority to grant petitioner permission to appeal pursuant to CPLR 5602 (a) (1) (i), and the certified question is unnecessary.
While the foregoing resolves one fundamental threshold question, it still remains for us to determine whether petitioner's appeal may be entertained in light of a recent development that occurred after the parties' briefs were filed in this Court. Specifically, because the term of the New Jersey Grand Jury investigating the alleged point-shaving conspiracy expired on August 2, 1993 and was not renewed, the reporter's notes and out-takes are no longer required. Accordingly, the petitioner's request for relief has become moot and a fair question may be raised as to whether the present appeal ought to be dismissed on that ground.
Applying the three-element analysis mandated by Matter of Hearst Corp. v Clyne (50 N.Y.2d 707, 714-715), however, we conclude that the appeal should be retained. First, the appeal unquestionably presents a novel and substantial legal issue, namely, the permissible scope of the sending State's judicial inquiry under CPL 640.10 (2). Second, there exists a likelihood that that specific legal issue will recur, particularly in view of the ever-increasing tendency of criminal enterprises to cross State lines and the mobility of potential witnesses. Indeed, during the oral argument of this appeal, respondent's counsel stated that respondent and its employees have often been subjected to CPL 640.10 (2) subpoenas and, in many of those instances, have sought to have the question of their journalist's privilege resolved in the context of sending State's statutory hearing. Finally, because of the length of time required to *528 resolve an appeal and the relatively short period during which Grand Juries are typically permitted to operate, the issue is one that is likely repeatedly to evade review. We have already recognized that, as a general proposition, Grand Jury terms are of relatively short duration and that, consequently, questions concerning the subpoenas they issue may, in a proper case, fall into the Matter of Hearst Corp. v Clyne category of questions that typically evade review (Matter of Grattan v People, 65 N.Y.2d 243, 245, n 1). The fortuitous facts that this particular New Jersey Grand Jury's term was extended for over two years and that these parties may not have sought accelerated consideration (see, dissenting opn, at 532-533) do not diminish the force of that legal proposition. Thus, we hold that the exception to the mootness doctrine should be invoked in these circumstances so that the appeal can be retained and the issue definitively decided.
Turning finally to the merits of this dispute, we conclude that the Appellate Division's decision to consider the privileged nature of the evidence sought in the New Jersey proceeding was error. The Appellate Division relied, in part, on a statement in People v McCartney (supra, at 622) to the effect that in a CPL 640.10 proceeding the party seeking relief must demonstrate that the evidence in question is "relevant, admissible and of significance to [that party's] case" (emphasis supplied). McCartney, however, is inapposite, because it concerned a proceeding in which New York was the demanding State. Its analysis was thus limited to the question of what must be proven in order to obtain a certificate under CPL 640.1 (3). McCartney does not illuminate the entirely separate question presented here: what issues should be considered when another State comes to New York with a certificate of materiality issued by one of its own courts and, under CPL 640.10 (2), seeks a subpoena compelling the appearance of a witness located in New York in an out-of-State criminal proceeding.
In those circumstances, CPL 640.10 (2) provides that the New York courts should make a determination as to whether the requested witness or evidentiary matter is "material and necessary." "Materiality" is a term of art that is used to denote "the relation between the propositions for which the evidence is offered and the issues in the case" (McCormick, Evidence § 185, at 541 [Cleary 3d ed]; accord, Fisch, New York Evidence § 3, at 3-5 [2d ed]). Similarly, "necessary" evidence is *529 evidence that is useful, legally significant and noncumulative.[2] Neither term subsumes the entirely separate concept of "privilege," which pertains to the disclosability and admissibility of otherwise probative and useful evidence (see generally, McCormick, op. cit., § 72; Fisch, op. cit., § 517). Thus, the question of whether evidence is "material" within the meaning of CPL 640.10 (2) may be resolved solely by reference to the subject matter of the investigation and the logical relationship of the evidence to that subject matter. Indeed, even the dissent points to nothing in the language of CPL 640.10 (2) that would justify an inquiry into whether the evidence sought might be subject to some identifiable privilege.
To be sure, the same might have been said in McCartney, where this Court gave broad scope to the inquiry, and specifically included the question of admissibility, when the demanding State is asked to determine, pursuant to CPL 640.10 (3) (or its local equivalent), whether the evidence or witness sought is "material." However, there were specific policy considerations in McCartney that led the Court to augment the burden of the party seeking relief in the demanding State's courts (see, 38 NY2d, at 622; see also, Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 640.10, at 306). Where, as here, the issue concerns the proper scope of the inquiry in the sending State, however, there are markedly different policy considerations, including the interests of comity and respect for a sister State's investigative processes.
It would be inefficient and inconsistent with the over-all purpose and design of this reciprocal statutory scheme to permit the sending State's courts to resolve questions of privilege on a CPL 640.10 (2) application. The purpose of the Uniform Act was to establish a simple and consistent method for compelling the attendance of out-of-State witnesses (see generally, Practice Commentary, op. cit., at 306). This goal *530 would be frustrated if the CPL 640.10 (2) hearings conducted by the sending State were to become forums for the litigation of questions of admissibility and evidentiary privilege, most of which will inevitably have to be litigated again anyway during the course of the demanding State's criminal proceeding.
Further, evidentiary questions such as privilege are best resolved in the State  and in the proceeding  in which the evidence is to be used. Whether a particular communication or document is entitled to the cloak of privilege is a complex question that requires a balancing of values and policy choices (see, McCormick, op. cit., § 72, at 171). Indeed, despite the dissent's contention that the material in issue is "facially protected as privileged" (dissenting opn, at 535), there remains much to be settled under the law of New Jersey, which holds that the journalist's privilege on which respondent here relies is subject to "countervailing constitutional right[s]" (Maressa v New Jersey Monthly, 89 NJ 176, 187, 445 A2d 376, 382, cert denied 459 US 907) and waiver by conduct (In re Schuman, 114 NJ 14, 552 A2d 602, 608) and, in fact, may be accorded less weight in the Grand Jury setting than in cases involving trial subpoenas (114 NJ, at 31-32, 552 A2d, at 611, supra).
In view of the sensitivity of privilege issues to local policy concerns and particularized legal rules, it would make little sense to construe CPL 640.10 (2) as authorizing the courts of this State to determine questions of privilege that arise out of the law of another jurisdiction and which relate to specific criminal proceedings pending in that other jurisdiction. In these circumstances, the courts of the demanding jurisdiction are better qualified, both because of their superior familiarity with local law and because of their direct access to the parties or the facts in the underlying controversy (see generally, Restatement [Second] of Conflict of Laws § 139 [generally, questions of inadmissibility due to privilege are determined by law of forum State]).[3]
Finally, to the extent that there exists a legitimate concern about the need to protect New York residents from unjustified "incursions" upon their liberty arising from forced participation in another State's criminal proceedings (see, People v McCartney, supra, at 622; *531 but cf., New York v O'Neill, 359 US 1, 11, supra ["(a) citizen cannot shirk his duty, no matter how inconvenienced thereby, to testify in criminal proceedings and grand jury investigations * * * even though he must travel to another State to do so"]), that concern may be adequately, and more appropriately, addressed through the statutory provision for consideration of whether a subpoena would cause "undue hardship" for the particular witness (CPL 640.10 [2]). Manifestly, if there is no "undue hardship" within the meaning of the statute, there can be no serious objection to requiring a witness to appear in the demanding jurisdiction and either give the requested evidence or litigate a claim of privilege in that forum. Here, of course, no such claim of "undue hardship" has been  or could be  made, since the witness in question is a highly mobile news organization and the criminal proceeding for which the evidence is sought is being conducted in a jurisdiction that borders on the witness's home State. Of course, the "hardship" balance might be different in a case involving a transcontinental, "border-to-border" or "multiple-forum" proceeding (see, dissenting opn, at 534).
Inasmuch as the Appellate Division erred in denying the requested subpoena solely on the ground that the information sought was, in its view, privileged, the proper remedy would ordinarily be a reversal with a direction to reinstate the Supreme Court's order directing respondent's appearance in the New Jersey proceeding. Here, however, such a remedy would be pointless, since the Grand Jury investigation in which the evidence is sought has been terminated and the evidence is no longer needed.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court, New York County, for further proceedings in accordance with this opinion; the certified question is not necessary and should not be answered.
BELLACOSA, J. (dissenting).
I respectfully dissent and vote to dismiss. This matter is moot because the New Jersey Grand Jury, which sought evidence from the American Broadcasting System, ended its work earlier this year. While the Court has the discretion to speak in a moot case, it is required to follow settled rubrics to invoke that exception. In my view, the required protocols have not been satisfied in this matter, which is layered with additional discretionary and dictum-like impediments that also ought to prudentially forestall the *532 Court's threshold leap. Inasmuch as the Court nevertheless steps out to the merits, I am forced to vote there, too, and would affirm the inanimate order of the Appellate Division.
The Court is unanimous, by concession of the parties, that our adjudication has no legal impact on the parties before the Court. The term of the Grand Jury in New Jersey expired without renewal more than two years after it sought from a New York television broadcaster "[a]ny and all notes * * * and all video and audio tapes of interviews" used in connection with the broadcaster's news program on point-shaving in college basketball games. The end of the Grand Jury in New Jersey is of no consequence to this Court in ending this "case" in New York, even though the judgment is a legal cipher. Because this matter did not survive as a case or controversy, the Court's propoundment is reduced to an advisory evidentiary exegesis. The pertinacity to expound this academic perspective is evident in the Court's rejection of well-settled jurisprudential policies and principles that have long guided courts away from the shoals of essentially idle exercises, especially those that are uncontested in the sense that the parties have no real stake in the outcome.
The particular lapse that compels my separate expression in this case is the core element of this Court's mootness override rubric  "a phenomenon typically evading review" (Matter of Hearst Corp. v Clyne, 50 N.Y.2d 707, 715 [emphasis added]; see also, Matter of Anonymous [Billie Boggs] v New York City Health & Hosps. Corp., 70 N.Y.2d 972, 974; contrast, Matter of Grattan v People, 65 N.Y.2d 243, 245, n 1). Rather than that prerequisite being satisfied, it is rationalized away to serve the Court's insistence on wresting a merits discussion out of the subject matter.
The essential words of that key ingredient illuminate the contradiction of the rationalization. The New Jersey Grand Jury was in existence for over two years, during which time, by the casual pace of the interested parties, this lawsuit likewise lackadaisically wound its way through the three tiers of New York courts. This is, on its face and the record, not the type of inherently urgent or exceedingly rapid "phenomenon" contemplated by the Court's settled rules, that allow only the most exceptional override of the interdiction against rendering advisory opinions. That some Grand Juries may generally be of short duration (majority opn, at 527-528) does not transform the mootness override admonition into a general access route *533 for judicial advice on all Grand Jury matters, despite mootness. Indeed, there is no showing in the course of this meandering litigation of preference requests in any courts or lack of opportunity to seek and receive accelerated consideration during the long term of this New Jersey Grand Jury  an investigatory-type, by the way, which does not "typically evade review" and is rather of the kind that is typically of very extended duration.
The Court discounts the high jurisprudential obstacle because of a perceived exigency to comment on aspects of this field of law. It would do well and better to wait to adjudicate a narrow, live legal dispute. By succumbing to the temptation instead to advise, the Court weakens an important procedural muscle and self-imposed discipline; to exercise the appropriate restraint in future moot scenarios will undoubtedly prove more difficult (see, Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 164 [Margaret E. Hall ed 1947] [A Judge "is not a knight-errant, roaming at will in pursuit of his (or her) own ideal of beauty or of goodness."]).
Going even farther in order to reach its merits goal, the Court finds it necessary also to overrule a long-standing, statutory, precedential, jurisdictional delineation (Matter of State of Washington v Harvey, 8 N.Y.2d 865; and Matter of Ryan [Hogan], 306 N.Y. 11 [declared "no longer good law", majority opn, at 527, n 1]). Next, it wipes from the books, with unpersuasive distinctions, relevant guidance expressed in an opinion of this Court in a real case decided in the crucible of a real controversy with real litigants fighting over real consequences with respect to the same statute (People v McCartney, 38 N.Y.2d 618, 622). That "case" speaks of the important New York policy considerations at work there, which are equally if not more importantly at risk in this "matter". Seemingly contradictorily, the Court sweeps aside the New York policy concerns by suggesting that New Jersey and other States are "better qualified" (majority opn, at 530) to weigh their concerns against those of New York citizens on freedom of the press privileges. All these features taken together should reinforce forbearance in this case. Unfortunately, they do not and are given little or no weight.
After leaping over all the hurdles, the Court arrives at its determined destination  an expansive statutory construction and a restatement of evidentiary principles, exerted in a *534 vacuum, of an interstate compact. The traditional, incremental, common-law development process is surely compromised by this exercise, which will affect applications of the new "rules" in a myriad of unknown factual controversies in the future. At bottom, this academic exercise represents an unfortunate drop down, well below dictum.
Since the merits are reached, I must go the distance, too, and am compelled to express my academic view, which I would rather leave to commentators or save, as a Judge, for a real dispute. The inanimate order of the Appellate Division should be affirmed essentially for the reasons expressed in Justice Ellerin's thoroughly analyzed opinion. This Court's hortatory pronouncement regarding this interstate evidence-gathering tool creates the potential for considerable inappropriate manipulation of judicial process. After all, evidentiary expeditions are not unknown when the quarries are rich media resource materials.
The particular facts give some life to this dead case and offer some relevant insights on why lack of prudential forbearance should be a real concern. The appellant is a Deputy Attorney General of the State of New Jersey, appearing in New York courts through the offices of the New York County District Attorney against the Capital Cities-American Broadcasting Corporation. In April 1991, the Deputy Attorney General secured a certificate from a New Jersey Superior Court Judge to present to a court in New York, under the interstate compact, to compel the production in New Jersey of witnesses in the employ of the American Broadcasting Corporation with "[a]ny and all notes * * * and all video and audio tapes of interviews [by respondent's reporter] concerning point shaving" in 1987-1988 college basketball games (emphasis added).
The majority seems to accord significant weight to the fact that the respondent New York media evidentiary source need travel only "across the river" to the neighboring State of New Jersey and, thus, would suffer minimal inconvenience in transporting its employees and its privileged evidence there. The propoundment of the Court's would-be rule does not, however, stop at the bank across the river, despite the majority's disarming disclaimer (majority opn, at 531). The disclaimer is patently unpersuasive because the principle emanating from this decision cuts across the continent, border-to-border, with multiple-forums consequences in the real litigated world of such matters. Otherwise, to state the obvious again, why not wait for a contested, live controversy and why speak to *535 the moot point now and here? My experience and judgment suggest that this far-reaching "precedent" will serve to haul any New York citizen into many other jurisdictions under an unnecessarily interpreted statute. New York State's citizens may have to cart themselves, their employees and their records wherever a New York court's potent writ commands them to go, whenever automatically invoked by any requesting State.
That dubious fallout is accomplished despite the fact that the requested information is facially protected as privileged press materials and is generally immune from governmental interference, chilling activities and inquisitive scrutiny in the requesting State with respect to the particular matter. Most other States for that matter, including New York with its strong public policy in this area, provide similar sanctuaries on statutory and constitutional grounds (O'Neill v Oakgrove Constr., 71 N.Y.2d 521, 533 [concurring opn, Bellacosa, J.] ["Journalists should be spending their time in newsrooms, not in courtrooms as participants in the litigation process"]; compare the New York public policy at issue in People v McCartney, 38 N.Y.2d 618, supra).
Finally, uneven applications and conflicting interpretations of this "precedent" with unbalanced impact on New York citizens, a media capital of the country and world, are the predictable consequences of this unnecessary excursion. One can only imagine what will occur when, in the future, real controversies with real litigation combatants file into New York courts under the interstate compact as evidentiary anglers from other States troll in New York's reservoir of media records and resources.
Preferably, the matter should be dismissed for mootness, but since the Court insists on advising on the merits, I would affirm.
Order reversed, without costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein, and certified question not answered upon the ground that the Appellate Division order is final and the certification of a question was thus unnecessary.
NOTES
[1] To the extent that our holdings in Matter of State of Washington v Harvey (8 N.Y.2d 865) and Matter of Ryan (Hogan) (306 N.Y. 11) are to the contrary, they are no longer good law and are not to be followed.
[2] We do not here consider whether the phrase "material and necessary" as used in CPL 640.10 (2) is intended to be applied as broadly and flexibly as the same phrase is now used in connection with civil discovery pursuant to CPLR 3101 (see, Allen v Crowell-Collier Publ. Co., 21 N.Y.2d 403; Siegel, NY Prac § 344 [discussing legislative and judicial history of the "material and necessary" standard in civil discovery]). Indeed, in view of the substantially different policy considerations underlying CPL 640.10 subpoenas (see generally, People v McCartney, 38 N.Y.2d 618, supra), we conclude that the question is best left for a case in which it is squarely presented. Our opinion here should not be construed as adopting any view of what constitutes "material and necessary" evidence, since the materiality and necessity for the evidence is not contested.
[3] Our holding should not be construed as foreclosing the possibility that in some future case a strong public policy of this State, even one embodied in an evidentiary privilege, might justify the refusal of relief under CPL 640.10 even if the "material and necessary" test set forth in the statute is satisfied. We need not decide that question now.