OPINION OF THE COURT
Jerald S. Carter, J.
The State of Connecticut makes application -for a material witness order directing Mr. James Murphy (Murphy), a New York State resident, to appear before an investigative Grand Jury inquiring into the homicide of Martha Moxley (Moxley), a 15 year old whose body was found on her family’s property located in Greenwich, Connecticut, on October 31, 1975.
The application submitted by Jonathan C. Benedict, State Attorney for the Judicial District of Fairfield, “represents” that Murphy, president of a New York private investigation firm, Sutton Associates, Inc., was retained by Rushton Skakel, Sr., father of Thomas and Michael Skakel, to investigate the death by homicide of Ms. Moxley. The Skakel brothers are considered suspects in the murder.
Mr. Benedict further represented that Murphy participated in separate interviews of the Skakel brothers conducted by an unknown/unnamed Sutton Associates, Inc. investigator. The dates of the interviews were not indicated in the representation. During the interviews in question, it is alleged that the Skakels gave statements placing themselves near the scene of the crime around the approximate time of the homicide. If *625 true, these statements are contradictory to statements allegedly given by the Skakels in interviews with the Connecticut Police in 1975. The factual details and allegations contained in the application, if true, would establish Murphy as a material witness and necessary to the Grand Jury investigation.
The court based on the foregoing on October 22, 1998, signed an order directing the respondent to appear on October 30, 1998 and show cause why he should not be directed to appear before the Grand Jury. Answering papers were submitted by the respondent, which asserted that the application of the State was inaccurate and misleading and the order sought violated attorney-client privilege. The matter was set down for hearing on December 2, 1998.
HEARING
On December 2, 1998, this court conducted an evidentiary hearing. The State introduced into evidence the certificate of materiality signed by Superior Court Judge John Ronan, the application of Fairfield State Attorney Jonathan Benedict (Benedict), and rested. The court considered the submission prima facie evidence of the representations of fact contained therein. (GPL 640.10 [2].)
The respondent, Murphy, took the stand and testified contrary to the substantive representations of the Benedict application. Murphy testified that he was not retained by Rush-ton Skakel, Sr. but by the Skakel family attorney, Thomas I. Sheridan, Jr., Esq. In support thereof, he produced the signed retainer agreement in the form of a confirming letter dated June 29, 1992 addressed to Thomas I. Sheridan, Jr., Esq. Subsequently, the Skakel family retained another attorney, Emanuel Margolis, Esq., to represent Thomas Skakel individually. Murphy testified that he additionally performed work for Mr. Margolis in connection with the same investigation. A subsequent letter was introduced into evidence by the respondent which clearly established that the respondent’s successor firm, Sutton Associates, Inc., was retained by Thomas Skakel’s successor attorney, Emanuel Margolis, to interview Thomas Skakel regarding his recollection of the events surrounding the death of Martha Moxley in 1975.
Both agreements indicate that all notes, memos, interviews and final reports constituted attorney work product and any such documents or information wouldn’t be provided absent the attorney’s prior written authorization. In addition, Murphy testified during cross-examination conducted by Mr. Benedict *626 that he never divulged to anyone the substance of the interviews conducted by Sutton Associates’ employees with the Skakel brothers:
“benedict: Let me put it this way: Those matters are recited, the information, rather, that it is recited in the State’s application is something that was not given up by you or any employee of yours with your authorization?
“murphy: That’s correct.
“benedict: Or with the authorization of anyone you represented?
“murphy: That’s correct.
“benedict: It was done, certainly done against your wishes?
“murphy: I’m not sure where you got the information from, Sir.” (Hearing transcript, at 37, lines 15-25, at 38, lines 1-3.)
The State introduced no rebuttal evidence or testimony.
DISCUSSION
The respondent presents two issues for consideration by this court:
(1) Does the issuance of a subpoena directing the respondent to appear before a Connecticut Grand Jury violate New York public policy as it violates the attorney-client privilege?
(2) Did the State’s application fail to demonstrate that James Murphy is a material and necessary witness?
The court will address each issue in the order presented by the respondent.
(1) Attorney-Client Privilege:
The respondent argues that this court should decline to sign the order directing him to appear before the Connecticut Grand Jury as it violates an overriding policy and universally accepted privilege protecting the attorney-client relationship. In support thereof, the respondent cites footnote 3 appearing in the case Matter of Codey (Capital Cities, Am. Broadcasting Corp.) (82 NY2d 521, 530, n 3 [1993]).
In Codey (supra), the State of New Jersey sought the attendance and testimony of a New York journalist who, in resistance, invoked New Jersey’s Shield Law. The law was similar to New York State’s Civil Rights Law § 79-h which affords a qualified privilege to professional journalists and newscasters from disclosing unpublished nonconfidential news information.
The Codey Court found that the potentially privileged status of the evidence held by the proposed witness was outside the *627 scope of proper consideration in an application pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (CPL 640.10 [Act or Uniform Act]). The Court explained that the purpose and intent of the Act would be frustrated if the sending State were to become the hearing courts for questions involving admissibility and evidentiary privilege. Such issues are best resolved in the demanding State in which the evidence is to be used. (Matter of Codey [Capital Cities, Am. Broadcasting Corp.], supra, at 530; see also, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 640.10, at 352.)
Despite the holding, the Court, in a footnote, recognized that there may be exceptions to this rule when it stated: “Our holding should not be construed as foreclosing the possibility that in some future case a strong public policy of this State, even one embodied in an evidentiary privilege, might justify the refusal of relief under CPL 640.10 even if the ‘material and necessary^ test set forth in the statute is satisfied.” (Matter of Codey [Capital Cities, Am. Broadcasting Corp.], supra, at 530, n 3.)
The respondent argues that the instant case constitutes the exception to the general rule contemplated by the Codey footnote. The court disagrees for the following reasons.
The hearing testimony established that Mr. Murphy was employed by the attorneys representing Thomas and Michael Skakel. The fact that Rushton Skakel, Sr. issued a check covering the investigative fees does not change the character of the professional relationship between Murphy and the attorneys. He conducted his investigation pursuant to their guidance and direction. He and his firm were agents of the attorneys. As such, the information derived and obtained therefrom is material constitutionally protected by the attorney-client privilege. Therefore, the notes, memoranda, interviews of Mr. Murphy and his associates are protected by the attorney-client privilege. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371 [1991]; United States v Nobles, 422 US 225 [1975].)
The respondent contends that the State of Connecticut seeks to violate the privilege by requesting this court sign an order directing him to appear and testify before the Grand Jury. He asserts that the attorney-client privilege is a constitutional right that must, as a matter of overriding public policy, be held sacrosanct against blatant incursions by Government. Counsel additionally cites CPLR 4503 in support of the respondent’s position. CPLR 4503, in sum and substance, prohibits an attorney *628 or anyone in his employ, including agents, from divulging information covered by the privilege absent a waiver by the client. To direct him to appear before the Grand Jury, it is argued, would result in him violating New York law.
Contrary to the respondent’s assertion, the attorney-client privilege is not a constitutional guarantee but is statutory, embodying the substance of common-law rule of evidence. (Upjohn Co. v United States, 449 US 383; People v O’Connor, 85 AD2d 92 [1982].) It covers such information considered confidential communication made to an attorney for the purpose of obtaining legal advice or services. (Matter of Priest v Hennessy, 51 NY2d 62 [1980].)
New York has codified the attorney-client privilege in CPLR 4503 which expressly prohibits the disclosure of communications of a confidential nature secured in the course of an attorney-client relationship.
However, CPLR 4503 specifically permits disclosure of privileged communication if the client waives the privilege. The question of waiver is factual and properly determined by the State in which the evidence sought is to be used. As there appears to be an allegation that the Skakel brothers have in fact waived the privilege by communicating the substance of their interview with third parties, it is appropriate for the Con-' necticut court, upon assertion of the privilege, to determine whether the Skakels have waived the privilege, footnote 3 notwithstanding.
Applicability of Codey Footnote 3
In the opinion of the court, footnote 3 of Codey (supra, at 530) contemplates a case where a demanding State does not recognize or have similar safeguards to protect the integrity of a fundamental evidentiary privilege such as the attorney-client privilege. Connecticut and New York have such safeguards.
“The Connecticut Supreme Court, in Doyle v. Reeves, 112 Conn. 521, 152 A. 882 (1931), defined this privilege with reference to the definition set forth in 5 Wigmore, Evidence (2d Ed.) § 2292. In Rienzo v. Santangelo, 160 Conn. 391, 395, 279 A.2d 565 (1971), the Supreme Court reaffirmed its adherence to this definition: ‘ “Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his [insistence] permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.” 8 Wigmore, Evidence § 2292, p. 554 *629 (McNaughton Rev.1961).’ This rule has not been altered by statute in Connecticut.” (Beal v Washton, 39 Conn Supp 167, 169, 472 A2d 812, 813 [Conn Super Ct 1983].)
Consistent with the foregoing, Connecticut courts have held that communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice and have extended the protection to agents such as investigators who are hired to collect and assemble facts necessary for representation in pending or anticipated litigation. (State v Gordon, 197 Conn 413, 497 A2d 965 [1985]; United States v Nobles, 422 US 225 [1975], supra; State v Cascone, 195 Conn 183, 487 A2d 186 [1985].)
This court is confident that, in view of the great respect given the attorney-client privilege by the Connecticut courts as evidenced by the above case law, should it order Murphy to appear in Connecticut and upon assertion of the subject privilege by Murphy, the Connecticut court will diligently analyze whether the privilege exists and if necessary, ascertain whether such privilege was waived, applying the above well-settled principles which are consistent with the protections recognized in the State of New York.
Accordingly, this court finds no undue hardship nor inherent violation of New York public policy that would prevent it from directing Murphy to appear before the Connecticut Grand Jury.
Notwithstanding the foregoing, a separate analysis is required regarding the issue of the State establishing the materiality and necessity of Murphy’s testimony.
(2) Materiality
CPL 640.10 places the burden of proof to establish that a witness is material and necessary upon the party seeking the testimony. (State of New Jersey v Bardoff, 92 AD2d 890 [1983].) The party seeking to secure the presence of an out-of-State witness in a criminal case must present evidence in the form of an affidavit or otherwise show that the testimony of the desired witness is material and necessary. (People v McCartney, 38 NY2d 618 [1976].) Applications under this section are not automatically or easily granted. (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 640.10, at 350-352.)
While the application pursuant to CPL 640.10 is entitled to full faith and credit, this court is charged with the responsibility to review and determine (1) whether the witness is material and necessary; and (2) whether the witness will suffer *630 undue hardship if ordered to appear. Upon demand by the witness, the court is obligated to conduct a hearing.
After conducting an evidentiary hearing, this court finds that the application submitted by the State’s Attorney fails to establish the materiality and necessity of Murphy’s testimony.
The State, as is its right, submitted into evidence for purposes of the hearing the certificate of materiality and the annexed application signed by Benedict, the State Attorney for the Judicial District of Fairfield. It was deemed by this court as prima facie evidence of all the facts stated therein. (Matter of Failla, 89 AD2d 923 [1982].)
However, the application, while considered prima facie evidence of the factual assertions contained therein, does not in and of itself, in view of the credible contradictory evidence adduced at the hearing, sustain the heavy burden of proof which rests with the State to establish Murphy’s materiality.
For example, the application represented, without attribution, that Murphy conducted an interview of Michael Skakel. The hearing testimony, on more than one occasion, established that no conversations were had between Michael Skakel and Murphy.
“gottlieb: It’s the State’s application that you participated in a conversation with michael skakel was that true or untrue?
“murphy: That is untrue.” (Murphy direct examination, at 34, lines 6-9.)
“benedict: You indicated you never had any personal contact [with] Michael Skakel; is that correct?
“murphy: That’s correct.
“benedict: Did you ever cause any of your employees to conduct an interview of Michael Skakel?
“murphy: Yes, sir.
“benedict: And who was it that you caused to conduct that interview?
“murphy: Willis Krebs”. (Murphy continuing cross-examination, at 40, lines 19-25, at 42, lines 2-3.)
The application further indicated that Murphy “conducted or participated” in an interview of Thomas Skakel. However, the hearing testimony established that the interview of Thomas Skakel was conducted at attorney Thomas Sheridan’s home or office by Willis Krebs and Mr. McCarthy, associates of Murphy. Murphy did not conduct or participate in the interview set forth in the State’s application:
*631 “benedict: If I can back up and discuss Thomas a little bit. As indicated in a couple of letters, some correspondence between yourself and, I think, attorney Margolis of Stamford, an interview of Thomas Skakel was set up to be conducted by a couple of your employees; is that correct?
“murphy: That’s correct, sir.
“benedict: And this a Mr. Krebs and a Mr. McCarthy?
“murphy: Correct.
“benedict: And to your knowledge, did they in fact conduct that interview?
“murphy: They did.” (Murphy cross-examination transcript, at 40, lines 2-18.)
As the State relied solely upon the sufficiency of the application, this court must contrast the evidence adduced at the hearing against the reliability of the substantive representations contained in the application. This is an independent judicial determination which balances the seriousness of a criminal investigation involving a homicide committed in a sister State against the rights of the requested witness.
For this court to exercise its authority and discretion to direct Murphy, a New York State resident, to appear before the Connecticut Grand Jury, it must be convinced that the State Attorney has established after the hearing that Murphy’s testimony is material and necessary. (People v McCartney, 38 NY2d 618, supra.)
This court, in making its own determination on the issue of Murphy’s materiality and necessity to the Connecticut investigation, must review the application when its sufficiency is contested. Although, pursuant to the statute, the application is prima facie evidence of the allegations made therein, when contested, the court must make its own evaluation of the application including making a determination as to the basis or source for the information contained therein and the reliability of that source or basis. The court’s review is made under the principles of New York law that would apply to the review of any application made before the court.
Here, no source or basis for the information and allegations was set forth in the application nor was the source or basis revealed at the hearing. The State’s application is neither an affidavit nor an affirmation made under penalty of perjury but merely a statement by the State’s Attorney wherein he “represents” the following facts and allegations set forth in the application.
*632 It is well settled, under New York law, that an affidavit submitted by an attorney containing hearsay information must provide the court with a basis upon which the court may determine the reliability of the assertions represented. (Amsterdam Mem. Hosp. v Bardascino, 84 AD2d 590 [1981].)
In the present case, the court determines it highly unlikely that the State Attorney had personal knowledge of the facts represented in the application. It is conceded by the State Attorney that Murphy never divulged the nature and extent of his knowledge of any of the Skakel brothers’ interviews.
So this court must assume that the information derived from some alternative unknown source.* However, if such is the case, it is incumbent upon the State to provide this court with evidentiary proof in acceptable form which will provide reasonable assurance that the hearsay representations are derived from a credible source with firsthand information. (People v Griminger, 71 NY2d 635 [1988].) In this regard, the State has failed to sustain its burden.
In light of the substantive inaccuracies established by the hearing testimony, the unsupported allegations submitted in support of the State’s application are of little probative value in determining Murphy’s materiality or necessity to the Moxley Grand Jury investigation. Indeed the hearing testimony establishes that Krebs and McCarthy are witnesses with firsthand knowledge of the alleged Skakel interviews.
In short, the application, while considered prima facie evidence of the factual assertions contained therein, does not survive when contrasted against the credible evidence adduced at the hearing. Unsupported statements that an out-of-State witness is material or necessary in a criminal case is not sufficient to require this court to grant the application under the *633 Uniform Act to secure the attendance of witnesses from without the State in criminal cases. (People v McCartney, supra.)
Accordingly, the court declines to sign the order. The State’s instant application is denied.

 During the oral argument, Benedict indicated that the source of the details contained in the application was Mr. Willis Krebs, an employee of Murphy’s organization, Sutton Associates, Inc. However, at no time was any evidence introduced by the State during the hearing nor was Mr. Krebs ever mentioned in the State’s application. (See, transcript Benedict closing, at 47, lines 10-13.) In any event, in view of the hearing testimony, Mr. Krebs appears to be the witness who may, in fact, be material and necessary to the facts and circumstances surrounding the alleged interview of Thomas and Michael Skakel.
This court understands that Mr. Krebs has been ordered to show cause before the Suffolk County Court why an order should- not be entered directing him to appear before the Moxley Grand Jury. That court will make its own determination.