[915 NYS2d 7]

ASSURED GUARANTY (UK) LTD., in the Right of Itself and of ORKNEY RE II PLC, Appellant, v J.P. MORGAN INVESTMENT MANAGEMENT INC., Respondent.

First Department, November 23, 2010

294

## APPEARANCES OF COUNSEL

*Wollmuth Maher & Deutsch LLP*, New York City (*William A. Maher, Vincent T. Chang* and *Randall R. Rainer* of counsel), for appellant.

*Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, New York City (*Richard A. Rosen, John F. Baughman, Farrah R. Berse* and *Jennifer K. Vakiener* of counsel), for respondent.

*Andrew M. Cuomo*, New York City (*Richard Dearing, Barbara D. Underwood* and *Robert C. Weisz* of counsel), for Attorney General of the State of New York, amicus curiae.

*Wilmer Cutler Pickering Hale and Dorr, LLP*, New York City (*Lori A. Martin* of counsel), for Securities Industry and Financial Markets Association, amicus curiae.

## OPINION OF THE COURT

SWEENY, J.

This appeal raises several issues, the most significant being whether common-law causes of action for breach of fiduciary duty and gross negligence are preempted by New York State's Martin Act (General Business Law §§ 352—359-h). This is a pure question of law and one that has generated a significant amount of discussion, both on the state and federal levels.

The facts are as follows:

Nonparty Scottish Re (U.S.) Inc., a United States-based life reinsurance company, had reinsured numerous life insurance policies having policy issue dates in 2004. The reinsured pool consisted of 373,725 life insurance policies with an aggregate insured amount of approximately $36.7 billion.

Scottish Re had established and maintained substantial capital reserves, known as economic reserves, which it determined would ensure its ability to meet potential projected obligations under its reinsurance agreements. These reserves are typically funded from the initial premium payment from the ceding insurer and the future net cash flows from the reinsurance agreement. Moreover, since these policies had guaranteed level premiums, Scottish Re was subject to regulations which required it to maintain an even higher level of capital reserves, known as excess reserves, above and beyond its economic reserves.

So as not to have to maintain these reserves, Scottish Re decided to cede substantially all of its 2004 term life reinsurance liability to another reinsurer. To that end, it formed Orkney Re II PLC and turned over its term life insurance reinsurance liabilities to that company.

Orkney raised the money for its reserves by issuing bonds and preference shares. The bonds included Series A and D notes. Scottish Re's parent, Scottish Re Group Ltd., purchased all of the preference shares and Series D notes. These notes were convertible into Orkney shares once the Series A and B noteholders were paid in full.

Plaintiff, a subsidiary of Assured Guaranty Ltd., guaranteed Orkney's payments to the Series A noteholders. On December 21, 2005, Orkney and defendant entered into an investment management agreement (IMA). Plaintiff is a third-party beneficiary of the agreement and was entitled to enforce Orkney's rights and remedies thereunder.

The investment guidelines for Orkney's (1) Excess Reserve Portfolio in the Reinsurance Trust Account and (2) Additional Funding Account had a stated goal of obtaining reasonable income while providing a "high level of safety of capital." Plaintiff alleges that the parties' understanding was that defendant would manage the two accounts "to no wider than a conservative 40 basis point spread," i.e., 40 basis points more than Orkney would have received if the portfolios had been invested in U.S. Treasuries.

The guidelines further provided that up to 60% of the two accounts could be invested in home equity loan asset-backed securities (ABS) and up to 50% could be invested in mortgage-backed securities (MBS). However, plaintiff alleges that the aforesaid class limits did not authorize or instruct investment in any asset class at the maximum level if such investment would not meet the overall objective of providing a high level of safety of capital for each account.

Subject to the investment guidelines, defendant had "complete discretion and authority" in its investment decisions over Orkney's accounts, including "investing in securities and other property of the type normally deemed appropriate for trust funds." The parties acknowledged that defendant was free to "make different investment decisions with respect to each of its clients" and such action would not be construed as a breach of defendant's duties to plaintiff. The agreement specifically stated that defendant did not guarantee future performance of the accounts or the success of the overall management of the accounts.

Although the agreement is governed by New York law, it provides that, "with respect to the assets held in the Reinsurance Trust Account, investment must be made in compliance with . . . Chapter 13 of the Delaware Insurance Code."

Defendant provided monthly statements to plaintiff and Orkney which listed the assets in each of the accounts and indicated their type (e.g., ABS-Home Equity Loans; ABS-Alternative A [Alt-A][1] Loans; CMOs [collateralized mortgage obligations]).

The agreement provides:

> "Except with respect to any act or transaction of [defendant] as to which [Orkney] shall object in writing to [defendant] within a period of ninety (90) days from the date of receipt of any statement from [defendant], [defendant] . . . shall upon the expiration of such period be released and discharged from any liability or accountability to [Orkney] and any of its agents or representatives as respects the propriety of acts, omissions, and transactions to the extent shown in such statement."

The complaint alleges that in August 2007, the monthly statement provided by defendant showed "precipitous declines" in

---

1. Alt-A borrowers "present materially greater default risk than do prime borrowers."

value of the assets in the subject portfolios. Plaintiff alleges, inter alia, that defendant knew of the substantial risks associated with subprime and Alt-A mortgage-backed securities but "concealed them from and failed to disclose them to" plaintiff. In fact, the complaint alleges that in August 2007, plaintiff raised "objections to Orkney being overexposed to risky subprime and Alt-A mortgage-backed securities." It alleges that defendant continued to advise plaintiff's financial officers that "the assets in the Accounts provided a high level of safety, were 'money good,' and that Orkney should retain the assets rather than sell them."

On September 24, 2007, Orkney exercised its contractual right to amend the investment guidelines and directed defendant to make all future investments "in cash, cash equivalents, money market securities or AAA-rated obligations" of government agencies.

Plaintiff commenced this action in December 2008, and amended its complaint on May 13, 2009. Defendant moved to dismiss the various causes of action pursuant to CPLR 3211 (a) (1) and (7).

The IAS court granted defendant's motion, finding that plaintiff's breach of fiduciary duty and gross negligence claims were preempted by the Martin Act. It also dismissed plaintiff's breach of contract claim because plaintiff failed to dispute that defendant's investment never exceeded the percentages set forth in the investment guidelines and did not allege adequate facts to support the allegation that defendant acted with gross negligence or willful misconduct. It further found that defendant did not violate chapter 13 of the Delaware Insurance Code (18 Del Code Ann) (*Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt., Inc.*, 28 Misc 3d 1215[A], 2010 NY Slip Op 51362[U]).

We first turn to the issue of whether common-law causes of action for breach of fiduciary duty and gross negligence are preempted by the provisions of the Martin Act. General Business Law, article 23-A, §§ 352—359-h, commonly referred to as the Martin Act,[2] "authorizes the Attorney General to investigate and enjoin fraudulent practices in the marketing of stocks, bonds and other securities within or from New York State" (*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236, 243 [2009]). As originally enacted, the statute only authorized the Attorney General to bring actions to enjoin im-

---

2. L 1921, ch 649

minent frauds and failed to address fraudulent activities that had been already completed. This omission was addressed by amendment in 1923,[3] which extended the Attorney General's authority to enjoin completed frauds. The statute continued to evolve and subsequent amendments gave the Attorney General power to seek receiverships[4] and restitution for investors who were the victims of fraudulent activities.[5]

Perhaps the most significant amendment to the Martin Act occurred in 1955 with the enactment of section 352-c,[6] which gave the Attorney General the power to bring criminal proceedings predicating culpability on mere conduct, absent any proof of scienter or criminal intent (*see State of New York v Rachmani Corp.*, 71 NY2d 718, 725 n 6 [1988]; *Caboara v Babylon Cove Dev., LLC*, 54 AD3d 79, 81 [2008]).

The act was again amended in 1960 to add section 352-e[7] to address an investment activity unknown at the time of the statute's original enactment—"the offer and sale of cooperative apartments ('coops') and condominiums" (Kaufmann, Introduction and Commentary Overview, McKinney's Cons Law of NY, Book 19, General Business Law art 23-A, at 9). The goal of this amendment was to prevent fraud in the offer and sale of these new real estate products by requiring extensive disclosure of relevant factors that formed the basis of the particular project in question.

The "hybrid" nature of the statute, which now governs "two distinct and critical areas of the economy—the securities and real estate marketplaces" (*id.*), has created two sets of regulations which in turn have spawned a whole body of case law. Over the years, the cases tended to blur the lines between these two sectors of the economy with the result that, on the question of preemption, many courts, erroneously in our view, have taken the position that the Martin Act preempts long-standing common-law causes of action (*see e.g. Nanopierce Tech., Inc. v Southridge Capital Mgt., LLC*, 2003 WL 22052894, *2, 2003 US Dist LEXIS 15206, *6 [SD NY 2003]; *Independent Order of Foresters v Donaldson, Lufkin & Jenrette Inc.*, 919 F Supp 149, 153 [1996]).

---

3. L 1923, ch 600
4. L 1925, ch 239, § 3
5. L 1976, ch 559
6. L 1955, ch 553, § 2
7. L 1960, ch 987

■ The plain language of the Martin Act does not explicitly preempt all common-law claims. "The general rule is and long has been that 'when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute.'" (*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 324 [1983]; *see also Caboara*, 54 AD3d at 83; McKinney's Cons Laws of NY, Book 1, Statutes § 301 [b]). "Although it is within the competence of the Legislature to abolish common-law causes of action . . . there is no express provision to that effect in the statute, notwithstanding numerous amendments of the Taylor Law" (*Burns Jackson* at 331). The principle stated in *Burns Jackson* regarding preemption of common-law rights is similarly applicable to the Martin Act.

There is no question that a private action cannot be maintained based upon the provisions of the Martin Act (*see CPC Intl. v McKesson Corp.*, 70 NY2d 268, 276-277 [1987]; *see also Kerusa*, 12 NY3d at 245). The fact "[t]hat no new per se action was contemplated by the Legislature does not, however, require us to conclude that the traditional, though more limited, forms of action are no longer available to redress injury resulting from violation of the statute" (*Burns Jackson* at 331). Thus, the fact that there is no private right of action under a statute does not automatically mean that the statute preempts common-law causes of action. *CPC Intl.* did not explicitly address whether the Martin Act preempted common-law claims based on the same facts that would allow the Attorney General to bring an action. In fact, the Court, giving the complaint its "most favorable intendment," permitted the plaintiff to proceed on its claim for common-law fraud (70 NY2d at 286). Moreover, *Kerusa* prohibited a private right of action "when the fraud is predicated solely on alleged material omissions from the offering plan amendments mandated by the Martin Act . . . and the Attorney General's implementing regulations" (12 NY3d at 239), a holding consistent with *Burns Jackson* (59 NY2d at 330). The *Kerusa* Court went on to find that the allegations in the plaintiff's complaint for common-law fraud were indistinguishable from its Martin Act claims and were thus merely "a backdoor private cause of action to enforce the Martin Act" (12 NY3d at 245). However, the issue of preemption of common-law causes of action was not directly addressed in either case, although many courts, particularly federal courts, have misinterpreted those cases to find such preemption of common-law causes of action arising from facts which would support a Martin Act claim.

Both state and federal courts have consistently and properly held that where a pleading is drafted in such a way as to cast what is clearly an obligation under the Martin Act as a common-law cause of action, that complaint would constitute, in effect, a prohibited private action based upon the provisions of the Martin Act and is preempted by the statute (*see Hamlet on Olde Oyster Bay Home Owners Assn., Inc. v Holiday Org., Inc.*, 65 AD3d 1284, 1287 [2009], *appeal dismissed* 15 NY3d 742 [2010]; *Breakwaters Townhomes Assn. of Buffalo v Breakwaters of Buffalo*, 207 AD2d 963 [1994]; *Rego Park Gardens Owners v Rego Park Gardens Assoc.*, 191 AD2d 621, 622 [1993]; *Eagle Tenants Corp. v Fishbein*, 182 AD2d 610, 611 [1992]; *Horn v 440 E. 57th Co.*, 151 AD2d 112, 120 [1989]; *Revak v SEC Realty Corp.*, 18 F3d 81, 90 [2d Cir 1994]). However, these decisions neither held nor implied that the Martin Act preempts properly pleaded common-law causes of action. The Second Department has read *Kerusa* to mean that where the facts as alleged in a complaint "fit within a cognizable legal theory, and are not precluded by the Martin Act, as they do not 'rel[y] entirely on alleged omissions from filing required by the Martin Act and the Attorney General's implementing regulations,' " such action will be permitted to proceed and a motion to dismiss predicated on a Martin Act preemption theory will be properly denied (*Board of Mgrs. of Marke Gardens Condominium v 240/242 Franklin Ave., LLC*, 71 AD3d 935, 936 [2010] [citations omitted]).

The Fourth Department, prior to the *Kerusa* decision, held that there is nothing in the Martin Act which precludes a plaintiff from bringing a common-law claim for breach of fiduciary duty "based on such facts as might give the Attorney General a basis for proceeding civilly or criminally against a defendant under the Martin Act" so long as generally accepted pleading standards are met (*Scalp & Blade v Advest, Inc.*, 281 AD2d 882, 883 [2001]).

We are mindful of the fact that, in recent years, a majority of the federal courts in the Southern District of New York have held that, except for fraud, the Martin Act forecloses any private common-law causes of action (*see e.g. Castellano v Young & Rubicam, Inc.*, 257 F3d 171, 190 [2d Cir 2001] [Martin Act preempts breach of fiduciary duty claim]; *Barron v Igolnikov*, 2010 WL 882890, *5, 2010 US Dist LEXIS 22267, *14 [SD NY 2010] ["There is no implied private right of action for any claim covered by the Martin Act"—in that case, a gross negligence claim]; *see also Nanopierce Tech., Inc.*, 2003 WL 22052894 at *2,

2003 US Dist LEXIS 15206 at *6 ["allowing private litigants to press common law claims 'covered' by the Martin Act would upset the Attorney General's exclusive enforcement power"]). However, not all courts in the Southern District have a similar view (*see e.g. Louros v Kreicas*, 367 F Supp 2d 572, 595-596 [SD NY 2005] [Martin Act does not bar breach of fiduciary duty claim]; *Cromer Fin. Ltd. v Berger*, 2001 WL 1135627, 2001 US Dist LEXIS 14744 [2001] [Martin Act does not preempt gross negligence claim]). Indeed, in an exhaustive analysis of this issue, Judge Victor Marrero of the Southern District of New York argues cogently and forcefully that to hold that the Martin Act preempts properly pleaded common-law actions actually serves to "leave[ ] the marketplace arguably less protected than it was before the Martin's Act passage, which can hardly have been the goal of its drafters" (*Anwar v Fairfield Greenwich Ltd.*, 728 F Supp 2d 354, 371 [2010]). Indeed, the Attorney General, in his amicus brief filed on this appeal, argues that "the purpose or design of the Martin Act is in no way impaired by private common-law claims that exist independently of the statute, since statutory actions by the Attorney General and private common-law actions both further the same goal, namely, combating fraud and deception in securities transactions."

The decision in *Anwar* meticulously traces the decisional journey from actions that undisputedly are preempted by the Martin Act to those that are merely "covered" by the Act. The court distinguished the decisions of New York State courts which, when carefully read in context with the legislative history of the Martin Act, do not address the issue of preemption vis-á-vis common-law rights of action. Nor do they go as far as the federal courts have in applying a blanket preemption to cases "covered by" the Martin Act. The court observed that "[w]hen 'violation of' swelled to 'covered by,' the specific became general." (728 F Supp 2d at 364.) The result was a significant expansion of the rule of the state courts "which had only dismissed claims relying solely on real estate regulations promulgated by the Attorney General under the Martin Act and had never preempted any causes of action that existed independent of the Martin Act" (*id.*).

In fact, New York State courts seem to be moving in the opposite direction from their federal brethren on the issue of preemption. The Second Department determined that "[n]o

case from the Court of Appeals holds that the Martin Act . . . abrogated or supplanted an otherwise viable private cause of action whenever the allegations would support a Martin Act violation" and reversed the dismissal of the plaintiffs' common-law fraud and breach of contract causes of action (*Caboara*, 54 AD3d at 82; *see also Board of Mgrs. of Marke Gardens Condominium*, 71 AD3d at 936).

We grant the Attorney General's motion to take judicial notice of certain memoranda of law filed in *People v Merkin* (Sup Ct, NY County, index No. 450879/09) (*see RGH Liquidating Trust v Deloitte & Touche LLP*, 71 AD3d 198, 207 [2009] [a court may take judicial notice of court records and files]). *Merkin* involved an action brought by the Attorney General against those defendants for breach of fiduciary duty. The defendants moved to dismiss, arguing that the breach of fiduciary duty claims were preempted by the Martin Act. While acknowledging that some courts held that common-law claims brought by private plaintiffs were preempted by the Martin Act, the Attorney General argued those cases were distinguishable as they were brought by private parties and, as such, do not apply to actions brought by the Attorney General. Indeed, in a footnote, the Attorney General argued, as he does here, that "the breach of fiduciary duty claims are wholly independent of the Martin Act and are not preempted" (citing *Scalp & Blade*, 281 AD2d 882 [2001] and *Caboara*, 54 AD3d 79 [2008]). We therefore reject defendant's argument that the position taken by the Attorney General in *Merkin* judicially estops him from urging that plaintiff's tort claims in this case are not preempted by the Martin Act.

The Attorney General argues in his amicus brief that the Martin Act was intended to supplement, rather than supplant, existing causes of action. We note that there is nothing in the Act or its legislative history, despite a number of amendments, that indicates any intention on the part of the Legislature to replace common-law causes of action by this legislation. Moreover, there has been no convincing argument advanced that would warrant a finding that private litigation, properly pleaded, impinges on the otherwise exclusive prosecutorial authority of the Attorney General. Since it is conceded that common-law fraud claims are not preempted by the Martin Act, and that such litigation, however voluminous, does not impair the Attorney General's ability to perform his mission under the Act, it flies in the face of logic to preclude other valid common-

law causes of action in the securities area, most of which would rely on the same facts and documents required for a successful fraud action.

In short, there is nothing in the plain language of the Martin Act, its legislative history or appellate level decisions in this state that supports defendant's argument that the Act preempts otherwise validly pleaded common-law causes of action. This decision is consistent with the general rule of statutory construction "that a clear and specific legislative intent is required to override the common law" (*Hechter v New York Life Ins. Co.*, 46 NY2d 34, 39 [1978]; *Belco Petroleum Corp. v AIG Oil Rig*, 164 AD2d 583, 589 [1991]).

We next take up defendant's argument that plaintiff's claims are barred because neither plaintiff nor Orkney objected to any of defendant's investments in the accounts in writing within 90 days, as required by section 7 (d) of the contract.

There is no question that parties may agree to a statute of limitations shorter than that set forth in the CPLR, provided that the agreement is in writing and the shortened period is reasonable (*see* CPLR 201; *Brintec Corp. v Akzo N.V.*, 171 AD2d 440 [1991]). Such an agreement bars tort claims—including claims for gross negligence—as well as contract claims (*see Par Fait Originals v ADT Sec. Sys., Northeast*, 184 AD2d 472 [1992]).

Applying this principle to this case, we find the 90-day limit set forth in section 7 (d) of the parties' IMA to be reasonable as a matter of law (*see Wayne Drilling & Blasting v Felix Indus.*, 129 AD2d 633, 634 [1987]). While plaintiff claims that it raised an objection to defendant in August 2007, that objection, if it could be characterized as such, was admittedly oral. The contract clearly requires objections to be in writing. We do not, however, accept defendant's argument that plaintiff did not object in writing until it filed the current action in December 2008. Drawing all inferences in plaintiff's favor, as we must on a motion to dismiss (*see Leon v Martinez*, 84 NY2d 83, 87 [1994]), we deem the September 24, 2007 amendment to the IMA's investment guidelines to be a written objection by the customer (Orkney) to defendant's acts and transactions, especially in light of plaintiff's August 2007 oral communications to defendant. Therefore, claims that accrued before June 26, 2007 (90 days prior to September 24) are barred (*see Buccino v Continental Assur. Co.*, 578 F Supp 1518, 1522 [SD NY 1983]).

Defendant next argues that section 14 (b) of the IMA bars plaintiff's contract claim because that claim does not sufficiently

allege gross negligence. This argument is without merit. "[T]here is no requirement that a complaint anticipate and overcome every defense that might be raised in opposition to a cause of action" (*Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 245 [2007]). Moreover, "when deciding whether to grant a motion to dismiss pursuant to CPLR 3211, [a court] must take the allegations asserted within a plaintiff's complaint as true and accord plaintiff the benefit of every possible inference" (*see Samiento v World Yacht Inc.*, 10 NY3d 70, 79 [2008]). Here, plaintiff alleges that defendant invested substantially all of the Excess Reserve Portfolio and Additional Funding Account in subprime and Alt-A MBS, even though (1) it knew that such assets were risky and that it was reducing its own exposure to them and (2) the portfolio/account's goal was "a high level of safety of capital." Plaintiff also alleges that, by investing in subprime and Alt-A MBS, defendant favored one client (Scottish Re Group) over another (Orkney). Since gross negligence consists of "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" (*Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823-824 [1993]), plaintiff's allegations in the complaint are sufficient to survive a motion to dismiss.

■ Contrary to defendant's next argument, Delaware Insurance Code (18 Del Code Ann) § 1323 is not limited to individual mortgages. The plain language of section 1323 (a) refers to "bonds, notes or other evidences of indebtedness secured by . . . deeds of trust representing first or second liens upon real estate." When the drafters of the Delaware Insurance Code wanted to make specific reference to individual mortgages, they did so (*see e.g.* 18 Del Code Ann § 1323 [a] [4] ["No mortgage loan upon a leasehold"]). Moreover, assuming, arguendo, the investments at issue are, as defendant argues, corporate obligations under section 1309, defendant's documentary evidence does not conclusively establish that it complied with section 1308, which imposes restrictions on the types of corporate obligations in which an insurer may invest (*see McCully v Jersey Partners, Inc.*, 60 AD3d 562 [2009]; *see also Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). That plaintiff did not specifically allege defendant's failure to comply with section 1308 is not fatal to its claim (*Leon*, 84 NY2d at 88; *McLaughlin v Thaima Realty Corp.*, 161 AD2d 383, 384 [1990]; *Kraft v Sheridan*, 134 AD2d 217, 218 [1987]).

■ We reject defendant's claim that it owes no duty to plaintiff. As a guarantor of certain of Orkney's obligations,

plaintiff sues in Orkney's right as well as its own. Since defendant had discretionary authority to manage Orkney's investment accounts, it owed Orkney a fiduciary duty of the highest good faith and fair dealing (*see Sergeants Benevolent Assn. Annuity Fund v Renck*, 19 AD3d 107 [2005]).

■ With respect to plaintiff's gross negligence claim, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals . . . may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties" (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]). An investment advisor may be considered a professional (*see Bullmore v Ernst & Young Cayman Is.*, 45 AD3d 461, 463 [2007]).

With respect to the issue of whether plaintiff's tort claims duplicate the contract claims, neither the breach of fiduciary duty claim nor the gross negligence claim is duplicative of the contract claim (*id.*; *Rodin Props.-Shore Mall v Ullman*, 264 AD2d 367, 368-369 [1999]).

■ Nor are plaintiff's tort claims barred by the economic loss rule, which denies the purchaser of a defective product a tort action against sellers, manufacturers, installers and servicers for purely economic losses sustained as a result of the defective product (*see Hydro Invs., Inc. v Trafalgar Power Inc.*, 227 F3d 8, 16 [2d Cir 2000]; *Bristol-Myers Squibb, Indus. Div. v Delta Star*, 206 AD2d 177, 181 [1994]). Even were we to apply the economic loss rule beyond defective products, "the better course is to recognize that the rule allows . . . recovery [for economic loss] in the limited class of cases involving liability for the violation of a professional duty" (*Hydro Invs.*, 227 F3d at 18).

We have considered the parties' remaining arguments and find them to be unpersuasive.

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered January 29, 2010, which, granted defendant's motion pursuant to CPLR 3211 to dismiss the complaint, should be modified, on the law, to reinstate the contract claims based on defendant's alleged violation of Delaware Insurance Code chapter 13 that accrued on or after June 26, 2007, as well as claims for breach of fiduciary duty and gross negligence that accrued on or after that date, and otherwise affirmed, without costs.

ANDRIAS, J.P., SAXE and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered January 29, 2010, modified, on the law, to reinstate the contract claims based on defendant's alleged violation of Delaware Insurance Code chapter 13 that accrued on or after June 26, 2007, as well as claims for breach of fiduciary duty and gross negligence that accrued on or after that date, and otherwise affirmed, without costs. Motion to take judicial notice granted.

Motion to take judicial notice of certain memoranda of law filed in *People v Merkin* (Sup Ct, NY County, index No. 450879/09) granted.