OPINION OF THE COURT
Clark, J.
In this appeal, the question presented is whether the Supreme Court erred in its determination to enforce a subpoena under the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (CPL 640.10) when the witness’s testimony potentially involves the assertion of privilege provided by Civil Rights Law § 79-h (b). We find that the Supreme Court acted properly in directing respondent to appear in the Colorado District Court. Accordingly, the inquiry into admissibility and privilege remains the province of the demanding state rather than the sending state.
As a threshold matter, we find that this appeal is not rendered moot by the fact that respondent appeared in the Colorado District Court because it “presents an issue of substantial public interest that is likely to recur and evade review” (Branic Intl. Realty Corp. v Pitt, 106 AD3d 178, 182 [1st Dept 2013]; see Coleman v Daines, 19 NY3d 1087, 1090 [2012]; Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]).
As to the merits, the Supreme Court properly directed respondent to testify in the criminal proceeding against petitioner. When seeking to compel a witness to testify in a criminal proceeding in another state, a petitioner bears the burden of securing a certificate from the out-of-state judge, presenting that certificate to a New York judge, showing that the witness’s testimony is “material and necessary,” and showing that such compulsion would not cause undue hardship to the witness (CPL 640.10 [2]; Matter of Tran v Kwok Bun Lee, 29 AD3d 88, 92 [1st Dept 2006]; State of New Jersey v Bardoff, 92 AD2d 890 [2d Dept 1983]). Petitioner furnished the court with a certificate issued, pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (CPL 640.10), by the Arapahoe County District Court Judge, and demonstrated that respondent’s testimony was “material and necessary” (Tran, 29 AD3d at 92; CPL 640.10 [2]), and that she would not suffer undue hardship because petitioner would pay the costs of her travel and accommodations (see Tran, 29 AD3d at 93-94).
Respondent’s reliance upon Civil Rights Law § 79-h (b) is unavailing. The narrow issue before the Supreme Court was *137 whether respondent should be compelled to testify, and privilege and admissibility are irrelevant for this determination (see Matter of Codey [Capital Cities, Am. Broadcasting Corp.], 82 NY2d 521, 528-530 [1993]; Matter of Magrino, 226 AD2d 218 [1st Dept 1996]). Respondent is entitled to assert whatever privileges she deems appropriate before the Colorado District Court. Compelling respondent to testify is distinguishable from compelling her to divulge the identity of her sources.
In Matter of Codey (Capital Cities, Am. Broadcasting Corp.) (82 NY2d 521 [1993]), the Court of Appeals held that the “privileged status of . . . evidence is not a proper factor for consideration under CPL 640.10 (2)” (id. at 524). Notwithstanding the holding in Matter of Codey, the dissent asserts that there are countervailing public policy implications that favor protecting the identity of an investigative reporter’s confidential sources. In addition, the dissent reasons that an “undue hardship” is presented when an investigative reporter relies upon confidential sources for her livelihood and is compelled to divulge the identity of her sources.
The dissent’s position conflates the separate and distinct concept of “privilege” with public policy and undue hardship. Privilege “pertains to the disclosability and admissibility of otherwise probative and useful evidence” (id. at 529). An undue hardship may pertain to “any familial, monetary, or job-related hardships” that result from being compelled to appear (Tran, 29 AD3d at 93). Nevertheless, undue hardship does not involve an analysis of the potential consequences if respondent exercises privilege in the demanding state. Again, the assertion of privilege remains irrelevant to the determination of whether a respondent should be compelled to testify pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (see Matter of Codey, 82 NY2d at 528-530; Matter of Magrino, 226 AD2d 218). Thus, if this Court were to resolve questions of privilege under the lens of public policy or undue hardship, it would frustrate the purpose of the reciprocal statutory scheme (id.).
The Court in Matter of Codey held that “[i]t would be inefficient and inconsistent with the over-all purpose and design of this reciprocal statutory scheme to permit the sending State’s courts to resolve questions of privilege on a CPL 640.10 (2) application” (Matter of Codey, 82 NY2d at 529). “Further, evidentiary questions such as privilege are best resolved in the State— and in the proceeding — in which the evidence is to be used” (id. at 530).
*138 We note that New York’s Shield Law (Civil Rights Law § 79-h [b]) continues to represent a strong public policy and the long history of vigilantly safeguarding freedom of the press (see O’Neill v Oakgrove Constr., 71 NY2d 521, 528-529 [1988]; Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 155-157 [1987]). The dissent argues that respondent’s appearance was ordered to identify law enforcement personnel, which requires the disclosure of her confidential sources. However, the facts presented on this record do not establish with absolute certainty that the Colorado District Court will require the disclosure of confidential sources. As such, it calls into question whether this matter truly embodies a conflict between evidence privileged under New York law and evidence that is unprotected in the demanding state. It is not certain that respondent will forfeit privilege protections under the law of the demanding state. Given this uncertainty, we do not find countervailing public policy concerns that justify “the refusal of relief under CPL 640.10 even if the ‘material and necessary’ test set forth in the statute is satisfied” (Matter of Codey, 82 NY2d at 530 n 3). Moreover, even if respondent asserts privilege under the New York Shield Law, privilege is irrelevant to this Court’s determination since admissibility and privilege remain within the purview of the demanding state rather than the sending state (id. at 530).
We find that the Supreme Court improperly sealed the record. “Generally, this Court has been reluctant to allow the sealing of court records, even where both sides to the litigation have asked for such sealing” (Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V., 28 AD3d 322, 324 [1st Dept 2006] [citations omitted]; see Liapakis v Sullivan, 290 AD2d 393, 394 [1st Dept 2002]; Matter of Hofmann, 284 AD2d 92 [1st Dept 2001]; Matter of Brownstone, 191 AD2d 167, 168 [1st Dept 1993]). This Court has consistently held that “[t]he presumption of the benefit of public access to court proceedings takes precedence, and sealing of court papers is permitted only to serve compelling objectives, such as when the need for secrecy outweighs the public’s right to access” (Matter of East 51st St. Crane Collapse Litig., 106 AD3d 473, 474 [1st Dept 2013] [internal quotation marks omitted]; Applehead Pictures LLC v Perelman, 80 AD3d 181, 191-192 [1st Dept 2010]). The requisite court rule, Uniform Rules for Trial Courts (22 NYCRR) § 216.1 (a), states as follows: “Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the *139 court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof.” Here, the court did not specify the grounds for sealing the record, nor did it issue a “finding of good cause.” Accordingly, in keeping with the strong public interest of openness in court proceedings, we direct that the record be unsealed (see Schulte Roth & Zabel, LLP v Kassover, 80 AD3d 500, 502 [1st Dept 2011], lv denied 17 NY3d 702 [2011]; Gryphon Dom. VI, LLC, 28 AD3d at 323-326).
Respondent’s references to matters dehors the record have not been considered (see Vick v Albert, 47 AD3d 482, 484 [1st Dept 2008], lv denied 10 NY3d 707 [2008]), with the exception of her reference to Colorado’s official court documents, judicial notice of which is appropriate (see Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc., 80 AD3d 293, 303 [1st Dept 2010], affd 18 NY3d 341 [2011]).
Accordingly, the order of the Supreme Court, New York County (Larry Stephen, J.), entered on or about March 7, 2013, which compelled respondent to testify before the District Court of Arapahoe County, Colorado, in a criminal proceeding against petitioner, should be affirmed, without costs. The Clerk is directed to unseal the record.
Saxe, J. (dissenting). The motion court was wrong to grant the CPL 640.10 petition and issue a subpoena requiring respondent to appear before the Arapahoe County District Court in Colorado. New York’s public policy, as reflected in this state’s Shield Law (Civil Rights Law § 79-h [b]), is violated when a court of this state directs a reporter to appear in another state, where the purpose of requiring her appearance is to obtain from her the identity of her confidential sources, and where there is a substantial possibility that the demanding court will issue such a directive. I therefore dissent from this Court’s affirmance of that order.
Petitioner James Holmes is currently being charged in the District Court of Arapahoe County, Colorado, with 166 felony charges, including 24 counts of first degree murder (see People v Holmes, Dist Ct, Arapahoe County, CO, case No. 2012-CR-1522), arising out of the shooting massacre at a movie theater in Aurora, Colorado, during a midnight showing of Batman, The Dark Knight Rises, on July 20, 2012. Petitioner obtained from the District Court, on July 23, 2012, an order limiting pretrial publicity, which directed the parties and law enforcement of *140 ficials to refrain from disseminating any information that would have a substantial likelihood of prejudicing the criminal proceeding. That same day, Colorado law enforcement officials executed a search warrant pursuant to which the Aurora Police Department seized a package that petitioner had sent to his psychiatrist before the shooting.
On July 25, 2012, FoxNews.com published an article, written by respondent Jana Winter, revealing details about the contents of the seized package. The article was entitled “EXCLUSIVE: Movie massacre suspect sent chilling notebook to psychiatrist before attack.” According to the article, the reporter had two law enforcement sources. One of them reportedly told her that petitioner mailed a notebook “ ‘full of details about how he was going to kill people’ to a University of Colorado psychiatrist before the attack.” That source reportedly said that “[t]here were drawings of what he was going to do in it — drawings and illustrations of the massacre.” The article also reported that the spiral-bound notebook had drawings of “gun-wielding stick figures blowing away other stick figures.” Both of respondent’s sources reportedly indicated that the intended recipient of Holmes’s notebook was a professor who treated patients at a psychiatric outpatient facility.
Later that same day, July 25, 2012, petitioner moved the District Court for an order enforcing compliance with the pretrial publicity order, citing the leak of information by the two unnamed law enforcement officials mentioned in respondent’s article. The District Court granted petitioner’s motion, directed the District Attorney and law enforcement agencies to immediately comply with the pretrial publicity order, and, again, prohibited them from disseminating information. The District Court also granted petitioner’s motion to seal the package, and directed the prosecution to destroy any copies.
On October 2, 2012, petitioner moved the District Court for sanctions to be imposed upon Colorado law enforcement officials for violating the pretrial publicity order “by leaking privileged and confidential information to the media concerning the contents of a package that [petitioner] sent to his treating psychiatrist.” The District Court conducted an evidentiary hearing to determine petitoner’s motion for sanctions, at which 14 law enforcement officials testified that they either partially viewed the contents of the notebook inside the package that petitioner sent to his psychiatrist, or they heard conversations about its contents. None of the law enforcement witnesses *141 admitted to providing information about the notebook’s contents to the media.
On January 17, 2013, petitioner moved the District Court for a certificate to compel respondent to testify and “produce to the Court her notes from her conversations with sources mentioned in her article,” pursuant to Colorado’s enactment of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Colo Rev Stat § 16-9-201 et seq.). Petitioner argued that respondent was the only person who could identify the two law enforcement agents who violated the pretrial publicity order by leaking information about the notebook’s contents to the media, and, thereafter, committed perjury by denying as much. On January 18, 2013, the District Court granted petitioner’s motion and issued a certificate compelling respondent “to spend [three] days in travel and testimony in” the criminal proceeding. The certificate explained that petitioner’s “counsel has used all available means to determine which law enforcement agent may have violated [the pretrial publicity order]. As none of these efforts have revealed the source of the information in [respondent]’s article, [respondent] has become a material and necessary witness in this case.” The court also reasoned that the alleged violation of the pretrial publicity order “is a serious issue” because the information about “the package contents has received significant public attention that has implicated [petitioner]’s constitutional rights to a fair trial, to a fair and impartial jury, and to due process.”
Petitioner then proceeded with the second part of the procedure dictated by the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings: he commenced this special proceeding pursuant to CPL 640.10 (2) seeking a subpoena ordering respondent to appear before the District Court of Arapahoe County, Colorado, “as a material witness to give testimony concerning the intentional violation of [the pretrial publicity order]” and “to produce to that court, her notes from her conversations with the two law enforcement sources mentioned in her article.” The motion court, rejecting as irrelevant respondent’s claim that the information sought from her was privileged, granted the petition.
I do not dispute the propriety of the Arapahoe County District Court’s issuance of the necessary certificate pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, because its task was *142 limited to finding that respondent’s testimony was “material and necessary” to petitioner’s defense in the criminal prosecution against him (see CPL 640.10 [2]). However, the determination in this state required the motion court to not only confirm the materiality and necessity of the requested evidence, but also to determine that respondent would not suffer “undue hardship” (id.). The motion court’s analysis on that point was based entirely on issues of travel costs and accommodations; it did not consider respondent’s assertion that she relies upon confidential sources for her livelihood, and that her sources would not speak to her if she divulged their identities. This aspect of her argument was treated as part and parcel of the privilege issue, which, the motion court found, was not within its purview to consider, citing Matter of Codey (Capital Cities, Am. Broadcasting Corp.) (82 NY2d 521 [1993]).
Similarly, the majority regards the issue before this Court as limited to materiality, relevance, and the hardship of the trip, and asserts that privilege is irrelevant for this determination, relying on Matter of Codey (id.). It reasons that respondent is entitled to assert the privileges provided by the Shield Law when she appears before the Colorado District Court, and distinguishes compelling respondent to testify from compelling her to divulge the identity of her sources. This approach ignores both the practical reality of respondent’s position, and the importance of our state’s public policy in favor of protecting the identity of investigative reporters’ confidential sources.
It should be acknowledged at the outset that the central reason respondent’s presence was sought, and was ordered, was to identify the law enforcement personnel who disclosed the notebook and its contents to respondent — that is, respondent’s confidential sources. This fact is crucial here, and it creates a crucial distinction with Matter of Codey.
Importantly, in Matter of Codey, the evidence sought through CPL 640.10 (2) was not the identity of a confidential source. The respondent’s news stories considered there concerned an alleged point-shaving scheme, which were based on information gleaned from confidential sources; the broadcast included excerpts of an interview with an unidentified player whose anonymity was preserved in the broadcast. However, that unidentified player then agreed to come forward and to cooperate with the Mercer County, New Jersey, grand jury investigation. The player acknowledged that he had been interviewed by respondent’s reporter, but said he was unable to recall all of the infor *143 mation that he had related during the 30-minute videotaped exchange. Accordingly, the New Jersey grand jury sought the videotaped outtakes and reporter’s interview notes, which became the subject of the special proceeding in this state (82 NY2d at 524). There is no indication in the decision that the Mercer County grand jury was seeking information revealing the identities of any other confidential sources for the respondent’s news stories, beyond the athlete whose identity they knew.
Despite the apparently definitive statements by the Court of Appeals in Matter of Codey that “the privileged status of the evidence is not a proper factor for consideration under CPL 640.10 (2)” (82 NY2d at 524), that “the Appellate Division’s decision to consider the privileged nature of the evidence sought in the New Jersey proceeding was error” (id. at 528), and that nothing in the language of CPL 640.10 (2) justified an inquiry into whether the evidence sought might be privileged (id. at 528-530), the Court, importantly, then made a point of announcing that it was not then deciding the question of whether, in another case, “a strong public policy of this State, even one embodied in an evidentiary privilege, might justify the refusal of relief under CPL 640.10 even if the ‘material and necessary’ test set forth in the statute is satisfied” (id. at 530 n 3). It is this pronouncement that the majority ignores and which forms the basis of our disagreement.
The provisions of New York’s Shield Law (Civil Rights Law § 79-h [b]) reflect just such a strong public policy. The provision is entitled “Exemption of professional journalists and newscasters from contempt,” and it specifically creates an “[a]bsolute protection” for “the identity of the source” of any published news (id.). The Court of Appeals recognized the paramount importance of the protection of journalists’ confidential sources in Matter of Knight-Ridder Broadcasting v Greenberg (70 NY2d 151, 155-156 [1987]), explaining that the legislature’s grant of absolute protection reflected a determination of public policy of this state.
In a case with many similarities to the matter before us, Matter of Beach v Shanley (62 NY2d 241 [1984]), a grand jury was seeking to determine whether the contents of a sealed report had been disclosed to the reporter by a grand juror or a public official or public employee in violation of Penal Law § 215.70 (id. at 247). The Court of Appeals quashed the grand jury subpoena that sought the testimony of the reporter as to the *144 identity of the person who had leaked a grand jury report, explaining that New York’s Shield Law “precludes any body from having a reporter held in contempt, fined, or imprisoned for refusing to disclose news or the identity of a source, regardless of whether the information is highly relevant to a governmental inquiry” (id. at 251). New York’s Shield Law applied to protect the identity of reporters’ confidential sources, “even when the act of divulging the information [to the reporter] was itself criminal conduct” (id. at 252).
A comparable situation is presented here. In both cases, the focus of the inquiry for which the reporter’s testimony was material and necessary was the identity of a person who leaked confidential information. The Court of Appeals’ reliance on the important public policy behind the absolute privilege that covers the identity of confidential sources is as applicable here as it was in Beach, and the majority fails to mention, let alone distinguish, this applicable precedent.
The majority says respondent may only raise the claim of journalists’ privilege and the protection of confidential sources in the Colorado District Court. However, unlike New York, Colorado does not recognize an absolute privilege for journalists’ confidential sources. Rather, its statute provides only for a qualified privilege (see Colo Rev Stat § 13-90-119). A journalist’s privilege in Colorado may be overcome if the person requesting information can prove the following by a preponderance of the evidence:
“(a) That the news information is directly relevant to a substantial issue involved in the proceedings; (b) That the news information cannot be obtained by any other reasonable means; and (c) That a strong interest of the party seeking to subpoena the newsperson outweighs the interests under the [F]irst [A]mendment to the United States [Constitution of such newsperson in not responding to a subpoena and of the general public in receiving news information” (§ 13-90-119 [3]).
So, although respondent may be entitled to raise the claim of privilege when she appears before the Colorado District Court, pursuant to the subpoena being affirmed by this Court, that court is extremely unlikely to allow her to protect her confidential sources. The applicable standard under the Colorado statute is limited, and the Colorado District Court has already determined, when it granted petitioner’s motion for a certificate to *145 compel respondent to testify, that it considers respondent’s identification of her confidential sources to he important, relevant and necessary for the protection of petitioner’s constitutional trial rights. Having already determined this, the Colorado court is unlikely to conclude that what it views as petitioner’s strong interest in protecting his constitutional rights is outweighed by respondent’s interests “under the [F]irst [A]mendment to the United States [Constitution ... in not responding to a subpoena and of the general public in receiving news information” (Colo Rev Stat § 13-90-119 [3] [c]).
In emphasizing that the facts presented “do not establish with absolute certainty that the Colorado District Court will require the disclosure of confidential sources,” the majority fails to acknowledge the near certainty that the Colorado court will reject respondent’s privilege claim and compel her to provide the identities of her confidential sources, leaving her to face either a contempt order and incarceration, or the loss of her reputation as a journalist. At that point, it will be too late for this Court to address whether respondent is protected by our Shield Law.
The majority also asserts that “[c]ompelling respondent to testify is distinguishable from compelling her to divulge the identity of her sources.” While that assertion may be true in general, the distinction is not applicable here. The only information petitioner seeks from respondent, the only reason she has been compelled to appear and testify, is so that she can disclose the identities of her confidential informants.
I conclude that New York’s expressed public policy in favor of providing absolute protection for reporters, so that they are not required to disclose the identity of their sources, is paramount here, and requires the rejection of petitioner’s application. Even if we assume that there might be some situations in which that protection should be permitted to give way to a petitioner’s right to a fair trial, this is not such a case. The identity of respondent’s confidential sources is likely to be irrelevant to petitioner’s defense at trial, because given the number of police department employees who knew about petitioner’s notebook, it is quite likely that respondent’s sources are not the ones the prosecutor will call to testify regarding the notebook. Even if a confidential source turned out to be a prosecution witness, and petitioner could use that individual’s violation of the court’s gag order to impeach his or her credibility, impeachment of a witness regarding the notebook and its contents is at best a sec *146 ondary issue in the murder prosecution. The public policy of protecting a reporter’s confidential sources and preventing her from being held in contempt and jailed for failure to disclose the information, should not be ignored merely so that petitioner is provided with grounds for impeaching the credibility of two individuals who might be called to testify regarding a secondary piece of evidence, particularly since the contents of the notebook speak for themselves.
This is exactly the type of case contemplated by the third footnote in Matter of Codey, where “a strong public policy of this State, . . . embodied in an evidentiary privilege, . . . justifies] the refusal of relief under CPL 640.10 even [though] the ‘material and necessary’ test set forth in the statute is satisfied” (82 NY2d at 530 n 3). Public policy requires the denial of petitioner’s application for a subpoena.
I must add that, in my view, respondent also established that undue hardship would result by requiring her testimony in the Colorado matter, which provides an additional justification for denying petitioner’s application. Respondent asserts, without challenge, that she relies upon confidential sources for her livelihood, and that her sources would not speak to her if she divulged the identity of a confidential source. The hardship to respondent if she is compelled to testify is far more than three days of travel, a hotel stay, and missing work; it is nothing short of undermining her career, the very means of her livelihood. Nothing in CPL 640.10 (2) limits the concept of “undue hardship” to the unpleasantness or cost of travel; here, the probable result of incarceration or the loss of her livelihood is far more of a “hardship” than those minor considerations.
Mazzarelli, J.R, and Freedman, J., concur with Clark, J.; Acosta and Saxe, JJ., dissent in a separate opinion by Saxe, J.
Order, Supreme Court, New York County, entered on or about March 7, 2013, affirmed, without costs. The Clerk is directed to unseal the record.